**David H. ELLIOTT, Insurance Commissioner of the State of Delaware, Defendant Below, Appellant,**

v.

**BLUE CROSS AND BLUE SHIELD OF DELAWARE, INCORPORATED, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Feb. 15, 1979.

Decided Sept. 12, 1979.

Dana S. Shreve, Asst. Atty. Gen., Wilmington, for appellant.

Max S. Bell, Jr., of Richards, Layton & Finger, Wilmington, for appellee; W. Michael Ireland of Blue Cross and Blue Shield of Delaware, Inc., Wilmington, of counsel.

Before HERRMANN, Chief Justice, DUFFY and HORSEY, Justices.

HORSEY, Justice:

This appeal concerns the construction of a provision of Chapter 25 of the Delaware Insurance Code, Title 18, dealing with regulation of rates of certain lines of insurance and Section 2507 thereof as to disapproval by the Insurance Commissioner of rate filings.

The Commissioner appeals from an order of the Court of Chancery enjoining him from disapproving and nullifying new rate filings of Blue Cross and Blue Shield of Delaware, Inc. before holding a hearing as to the filings. The Commissioner contends that a 1971 amendment to 18 *Del.C.* § 2507 authorizes him to issue an order disapproving a new rate filing and denying use thereof without a prior hearing. Blue Cross contends that the 1971 legislation does not confer on the Commissioner authority to disapprove a rate filing and make such disapproval effective before the insurer is given a hearing. Blue Cross further contends that the 1971 amendment may not be interpreted as abolishing the "file and use" concept of the Delaware Insurance Code, which means that a new rate becomes effective and useable by an insurer on the filing of such rate—subject to later modification or rejection by the Commissioner.

■ For reasons hereafter given, we conclude that the Court of Chancery erred in construing the 1971 legislation as making no material change in § 2507 and in finding that the amendment did not authorize the Commissioner to amend or revoke a rate filing before holding a hearing. We adopt a "middle ground" as to the consequences of the 1971 amendment. We hold that under the statute, as amended, a new rate filing continues to be effective on the stated date (which may be the date of filing or a later date), but that the Commissioner may disapprove the new rate before holding a hearing thereon. However, in doing so, the Commissioner must specify the reason

for his disapproval and provide (1) that the effective date of his order shall be "within a reasonable period" after the date of the order,[1] and (2) that a hearing will be held on the rate filing and his order, if requested by the insurer, within 20 days of such request. In other words, under the amended statute, the Commissioner is now permitted to nullify a new rate filing prior to the holding of a hearing, which he could not do under the statute prior to its amendment, subject to the insurer's right of hearing within 20 days, as stated above.

## I

This case arises out of rate filings submitted in February 1978 by Blue Cross and Blue Shield, pursuant to Chapter 25 of the Insurance Code, 18 *Del.C.* Ch. 25, with the filings having a stated effective date on or after April 1, 1978. Without holding a hearing, the Insurance Commissioner in March entered orders denying the new rates and barring Blue Cross from using them. Upon petition of Blue Cross for relief, the Court of Chancery issued a preliminary injunction, enjoining the Commissioner from preventing use of the new rates prior to a hearing on them. The Commissioner then filed an interlocutory appeal,[2] and thereafter the parties reached a settlement. However, the parties requested, and this Court agreed to provide a construction of the statute because of the substantial public interest in having the question finally determined. See *Darby v. New Castle Gunning Bedford Educ. Ass'n.*, Del.Supr., 336 A.2d 209 (1975).

## II

■ Before looking more closely at § 2507, it may be helpful to put the section's subject, subtitled, "Disapproval of filing", in its proper setting. Chapter 25, titled "Rates and Rating Organizations" is con-

---

1. This is apparently intended to give the insurer a reasonable time to adjust any effective rates to the Commissioner's order.

2. The Court of Chancery certified the appeal which was accepted by this Court. See Supreme Court Rule 42.

cerned primarily with the regulation of insurance rates, for the purposes[3] stated in § 2501, as to specified lines of insurance described in § 2502. Section 2503 deals with the "making of rates" and considerations to be used in determining rates and classification of risks; § 2504, with "Rate filings" and requiring every insurer to make rate filings with the Commissioner (with certain exceptions); § 2505 with exemptions from filings; and § 2506 with "Effective date of filing." Section 2506 provides as follows:

> "(a) The Commissioner shall review filings as soon as reasonably possible after they have been made in order to determine whether they meet the requirements of this chapter. The filings shall be deemed to meet the requirements of this chapter unless disapproved by the Commissioner.
>
> (b) Any special filing with respect to a surety or guaranty bond required by law or by court or executive order or by order, rule or regulation of a public body, not covered by a previous filing, shall become effective when filed and shall be deemed to meet the requirements of this chapter until such time as the Commissioner rejects the filing." 18 *Del.C.* § 2506.

This then brings us to § 2507. Prior to the amendment in 1971[4] of 18 *Del.C.* § 2507, the statute read:

> "If within 30 days after a specific inland rate, a special surety or guaranty on a risk specially rated by a rating organization, subject to subsection (b) of section 2504 of this chapter, has become effective, the Commissioner finds that such filing does not meet the requirements of this chapter or if upon review of any other filing, the Commissioner finds that

the same does not meet the requirements of this chapter, he shall, after a hearing held upon not less than 10 days' written notice specifying the matters to be considered at such hearing, to every insurer and rating organization which made such filing, issue an order specifying in what respects he finds that such filing fails to meet the requirements of this chapter, and stating when, within a reasonable period thereafter, such filing shall be deemed no longer effective. Copies of the order shall be sent to every such insurer and rating organization. The order shall not affect any contract or policy made or issued prior to the expiration of the period set forth in the order."

The original statute clearly provided that the Commissioner could only reject or modify a rate filing "after a hearing." Furthermore, if the rate had been made effective by an insurer before hearing, it could only be made ineffective after hearing and the expiration of a "reasonable period thereafter." The language of § 2506, quoted above, also indicates that the rate filing code provisions put Delaware in the category of "file and use" rate regulation statutes. As stated above, the term "file and use" is understood to mean that an insurer who files a new rate may use it *upon*, or within a self-designated time after, filing, without the requirement of first obtaining approval from the Insurance Commissioner.

■ Under this "file and use" rate procedure, an insurer controls the effective date of a new rate filing. If an insurer files a proposed rate change sufficiently in advance of its proposed effective date so that the Commissioner has the necessary time to examine the filing and supporting documentation and to hold a hearing (if he believes the rate filing should be modified

---

**3.** § 2501 defines the Chapter's purpose as being, ". . . to promote the public welfare by regulating insurance rates . . . to the end that they shall not be excessive, inadequate or unfairly discriminatory . . . [without intending] to prohibit or discourage reasonable competition, or . . . prohibit or encour-

age . . . uniformity in insurance rates . . . ." 18 *Del.C.* § 2501.

**4.** and as originally enacted in 1968, 56 *Del. Laws*, C. 380.

or rejected), there is no problem. However, the statute permits filings to be made by an insurer with an effective date which will not permit time for a hearing to be held prior to such effective date.[5] The result is that if the new rate is later disallowed, the insurer has been permitted to charge an unlawful rate for a considerable period of time to the possible detriment of the public. Conversely, if the rate is not allowed until after a hearing, the insurer has been deprived of a right to use a lawful rate for an appreciable period of time.

Thus, it appears from § 2506 and § 2507 that the Legislature clearly opted for the former "file and use" procedure when the Code and § 2507 were originally adopted in 1968. The question now is whether the Legislature, by the 1971 amendment, intended to abolish the concept and practice, or to modify it in any way.

### III

The 1971 legislation amending § 2507 provided as follows:

> "§ 2507, Chapter 25, Title 18, Delaware Code, is hereby amended by striking 'after a hearing held upon not less than ten (10) days written notice specifying the matters to be considered at such hearing, to every insurer and rating organization which made such filing', and substituting 'specify the reason for his disapproval and state that a hearing will be granted within twenty (20) days after request in writing by the insurer or rating organization which made such filing.'" 58 *Del. Laws* C. 238 (July 9, 1971).

As can be seen, the Legislature, rather than repealing the existing § 2507 and restating

it, struck certain language and substituted other language and, in so doing, created a construction problem.

—

That the 1971 amendment is less than clear appears from the treatment accorded it by the Delaware Code Revisors in preparing the 1974 Revised Delaware Code. A reading of § 2507 in that Code discloses that the Revisors have discounted the amendment and excluded it from § 2507, with the result that the current Code contains the identical language adopted when the Insurance Code was enacted in 1968. The Revisors took this unusual action after apparently concluding that they could not determine what the intent of the Legislature was by the 1971 amendment. In a "Revisor's Note" to § 2507, the Revisors, after referring to the passage of the 1971 amendment, state:

> "In as much as this amendment will render the first sentence confusing, the deletion and substitution are made as indicated and because the revisors are unable to ascertain the legislative intent, the amendment has not been implemented and the section is set out above as enacted by 56 Del. Laws, c. 380." *Revisor's Note*, 18 *Del.C.* § 2507.

■ But the Revisors' failure to incorporate the amendment into the 1974 revised Code does not void it. Having been duly passed by the General Assembly and signed by the Governor, the amendment is law.[6] Therefore, we must interpret the statute as amended. In doing so, it may be of assistance to provide a side-by-side comparison of the original statute and the 1971 amendment.

---

**5.** In fact, there is no statutory requirement that the filing be made before the effective date; conceivably, a rate filing may be stated to become effective on date of filing with the Commissioner. See § 2506 quoted above.

**6.** See 1 *Del.C.* §§ 109, 211.

## § 2507. Disapproval of filing

[1953 Code] | [As Amended, 1971]

"If within 30 days after a specific inland rate, a special surety or guaranty on a risk specially rated by a rating organization subject to subsection (b) of § 2504 of this title has become effective, the Commissioner finds that such filing does not meet the requirements of this chapter or if upon review of any other filing, the Commissioner finds that the same does not meet the requirements of this chapter, he shall,

after a hearing held upon not less than 10 days written notice specifying the matters to be considered at such hearing, to every insurer and rating organization which made such filing,

issue an order specifying in what respect he finds that such filing fails to meet the requirements of this chapter and stating when, within a reasonable period thereafter, such filing shall be deemed no longer effective. Copies of the order shall be sent to every such insurer and rating organization. The order shall not affect any contract or policy made or issued prior to the expiration of the period set forth in the order."

"If within 30 days after a specific inland rate, a special surety or guaranty on a risk specially rated by a rating organization subject to subsection (b) of § 2504 of this title has become effective, the Commissioner finds that such filing does not meet the requirements of this chapter or if upon review of any other filing, the Commissioner finds that the same does not meet the requirements of this chapter, he shall,

specify the reason for his disapproval and state that a hearing will be granted within twenty (20) days after request in writing by the insurer or rating organization which made such filing,

issue an order specifying in what respects he finds that such filing fails to meet the requirements of this chapter and stating when, within a reasonable period thereafter, such filing shall be deemed no longer effective. Copies of the order shall be sent to every such insurer and rating organization. The order shall not affect any contract or policy made or issued prior to the expiration of the period set forth in the order."

Blue Cross suggests that the sole reason for the 1971 amendment was to dispense with the burdensome administrative formality of mandatory hearings in cases in which an insurer desires to acquiesce in the Commissioner's modification (or rejection) of a filing and hence, a hearing would be pointless. As supporting authority for this, Blue Cross relies on Delaware Insurance Department bulletin issued by then Insurance Commissioner Short in 1971, shortly after the enactment of the amendment. After quoting the language change of § 2507, the Commissioner stated:

"This simply means that previously it was required that the Commissioner have a hearing each time he disapproved a filing. The new law states that upon disapproval, the company or rating organization may request a hearing but it is not mandatory that a hearing be held."

Thus, Blue Cross takes the position that the amendment makes no change in the operation or meaning of § 2507 as originally adopted and is intended only to "correct . . . a needless technical burden under the statute [of] an obligation to hold a hearing even when it was not wanted or needed." However, this argument does not take into account what the statute now states:

"If within 30 days after a specific inland rate . . . has become effective, the Commissioner finds that such filing does not meet . . . the requirements of this chapter, *he shall* specify the reason for his disapproval and state that a hearing will be granted within twenty (20) days after request . . . *issue an order specifying* . . . [the filing's non-compliance] . . . and *stating when,* within a reasonable period thereafter, *such filing shall be deemed no longer effective. . . .*" (emphasis added).

Under the original statute, the *time* of issuing the order was clearly made to *follow* the Commissioner's hearing. Under the amended statute, the time of issuing the order is not related to the holding of a hearing or made to *follow* a hearing since those words are deleted, but now is related to and presumably occurs *after* the Commissioner finds the rate filing to be not in compliance. Further, a hearing will not be held under the amended statute until requested by the insurer (and then "will be granted within" 20 days); while prior to the amendment, a hearing by the Commissioner not only was mandatory but must precede the issuance of an order by the Commissioner specifying the legal failings of the rate filing. Thus, under the amendment the order *would be issued* preceding a hearing (rather than following it as prior to the amendment); *and* the insurer's rate filing ceases to be effective "within a reasonable time thereafter"—which, again, appears to mean after the date of issue of the order.

In this vein, the Commissioner argues that the 1971 amendment of § 2507 must be read as meaning that the Commissioner may now by summary order issue before hearing disapprove a rate filing. He argues that the amendment's purpose was to change the requirement of the statute that a hearing be held prior to disapproval of a rate filing and that this is the only reasonable interpretation of the statute as amended which will give effect to the amended language of § 2507. See *State v. Fowler*, Del.Super., 194 A.2d 558 (1963); *A&P Stores v. Hannigan*, Del.Supr., 367 A.2d 641 (1976); and *Keys v. State*, Del.Supr., 337 A.2d 18 (1975). To construe the legislative enactment as Blue Cross does would be to deprive the legislation of any significant purpose. See *In re Estate of Webb*, Del. Ch., 269 A.2d 413 (1970), aff'd Del.Supr., 276 A.2d 457 (1971). See also *Chrysler Corp. v. State*, Del.Supr., 2 Storey 544, 163 A.2d 239 (1960).

The clarity of § 2507 before its amendment that a hearing was required to be held before a rate filing might be disapproved, results largely, if not entirely, from the syntax of the sentence which places the phrase, "after a hearing held upon not less than 10 days written notice specifying the matters to be considered at such hearing, to every insurer and rating organization which made such filing," between the words, "he [the Commissioner] shall" and the words "issue an order specifying in what respects he finds that such filing fails to meet the requirements of this chapter . . . ." It seems to us that the deletion of the above-quoted words in the phrase beginning "after a hearing held . . ." and the substitution of the words, "specify the reason for his disapproval and state that a hearing will be granted . . ." signifies a significant change in the intended sequence of the holding of a hearing and the entry of an order and a fairly clear intent to reverse the sequence. In other words, before 1971, the hearing had to precede the order whereas after 1971 the order is given precedent to the hearing.

Thus, it becomes apparent that 58 *Del. Laws* C. 238 has, in the words of the Commissioner, "turned a mandatory pre-disapproval hearing into a post-disapproval hearing held only upon the request of the insurer making the filing." To paraphrase the statute, it appears that when the Commissioner finds that a rate filing does not meet the requirement of Chapter 25, § 2507 provides that he shall: (1) issue an order specifying the reasons for his disapproval; (2) state that a hearing will be granted within 20 days after written request for a hearing by the insurer; and (3) state when, within a reasonable period after entry of his order, the disapproved rate shall no longer be effective, if it has previously gone into effect.

Blue Cross argues that this construction and application of § 2507 will result in a drastic change in the basic nature of insurance rate regulation and suggests that it will convert the Delaware insurance statute from a "file and use" statute to a "prior approval" statute. Blue Cross further states that such a construction will, in effect, require of an insurer prior approval of a rate change. We disagree. We do not believe that our construction of § 2507 as amended nullifies the "file and use" opera-

tive concept. As we interpret the amended statute, the concept remains intact, though now the Commissioner may before, rather than after, a hearing amend or reject the rate filing. But until he does so, an insurer may use or put into effect its new rate following filing; and the Commissioner may not alter or upset the rate filing by his order until the expiration of "a reasonable period thereafter." We agree with Blue Cross that the "file and use" concept is embodied in Chapter 25 and in particular, within § 2506(a) and (b). Section 2506 stands unchanged since adopted in 1968; and in the words of Blue Cross, a clearer "signal" would be required from the Legislature than 58 *Del. Laws* C. 238 for us to conclude that the 1971 legislation was intended to move Delaware from the "file and use" ranks to the "prior approval" side. While Blue Cross contends that the Commissioner takes this position, we do not understand him to, but in the event he does, we reject the contention and choose the "middle ground" referred to at the outset of this decision.

Finally, Blue Cross argues that to construe § 2507 as permitting the Commissioner to modify or reject a rate filing before hearing will result in a situation whereby an insurer could be interminably delayed from using a legal rate by the Commissioner's failure to hold a prompt hearing. We find this argument to be without merit. The Commissioner is required by § 2506 to review filings "as soon as reasonably possible after they have been made." Furthermore, and of more significance, § 2507 expressly requires the Commissioner to grant a hearing within 20 days of receipt of a request for a hearing from his disapproval of a rate filing. We also note under § 6443 of 29 *Del.C.* Chapter 64, the Delaware Administrative Procedures Act (the provisions of which are applicable to the Insurance Commissioner under § 6461), the availability of a mandamus action for failure of an agency to take any action required of it by law.

We reverse the decision of the Court of Chancery and its holding that 18 *Del.C.*

§ 2507, as amended, does not authorize the State Insurance Commissioner to enter an order disapproving an insurer's rate filing without a prior hearing.

For the reasons stated the judgment of the Court of Chancery is REVERSED and the case is REMANDED for proceedings not inconsistent with this opinion.