David H. ELLIOTT, Insurance Commissioner, Respondent, Appellant,

v.

BLUE CROSS & BLUE SHIELD OF DELAWARE, INC., Petitioner, Appellee.

Supreme Court of Delaware.

Submitted: May 9, 1983.

Decided: July 7, 1983.

See also, 449 A.2d 267.

Catherine S. Mulholland (argued), Deputy Atty. Gen., for appellant.

Max S. Bell, Jr. (argued), John J. Schreppler, II, Richards, Layton & Finger, and William E. Kirk, III, Blue Cross & Blue Shield of Delaware, Inc., Wilmington, of counsel, for appellee.

Before McNEILLY, HORSEY, and CHRISTIE, JJ.

CHRISTIE, Justice:

This appeal involves the question of whether a disallowance and rollback of filed health insurance rates may be enforced by

the Insurance Commissioner where the Commissioner has conducted a hearing and the evidence has revealed that the prior rates, which will be reinstituted on account of the rollback, are inadequate.

Delaware is a "file and use" state in regard to specific lines of insurance. "[T]he term 'file and use' is understood to mean that an insurer who files a new rate may use it *upon,* or within a self-designated time after, filing, without the requirement of first obtaining approval from the Insurance Commissioner." *See generally Elliott v. Blue Cross & Blue Shield, Inc.,* Del.Supr., 407 A.2d 524, 527 (1979), [*Elliott v. Blue Cross (1979)*]. However, the provisions of the Insurance Code, Title 18, Chapter 25, 18 *Del.C.* § 2507 permit the Commissioner to disallow and rollback those filed rates by written order before a hearing is afforded.

David H. Elliott, the Insurance Commissioner, appeals from a decision of the Superior Court dated September 30, 1982, which granted an injunction against the Commissioner, and from the issuance of a writ of mandamus. Superior Court enjoined an October 1, 1982 effective date for the disallowance and rollback of certain health insurance rates which had been filed May 26, 1982 and had already been put into use by Blue Cross and Blue Shield of Delaware, Inc. in third-quarter contracts (July, August, and September). The Superior Court issued a writ of mandamus to compel the Commissioner to render a final decision on the merits of the rate increase which had been the subject of a public hearing conducted September 1 through September 8, 1982. In effect, the Superior Court held that the Commissioner could not rollback rate increases filed by Blue Cross until he had made a final determination as to the

propriety of the increases. We think this ruling was not in accord with the statutory scheme.

As it turned out, the Commissioner did not act promptly on the merits of the rate increase; he did not comply with the writ until March 17, 1983, when he disallowed a part of the filed rate increase and established June 1, 1983 as the date for a partial rollback. Although his decision caused this appeal to appear to be moot, the parties have stipulated that identical and significant questions of law regarding the effect of 18 *Del.C.* § 2507 are continuing to recur in regard to other rate filings. Therefore, they have requested this Court to address the issues raised. This Court has agreed to consider the issues because the questions raised are matters of continuing importance to the State and to the numerous citizens of Delaware who are Blue Cross subscribers. *See Fraternal Order of Police, Delaware— Wilmington Lodge No. 1 v. McLaughlin,* Del.Supr., 428 A.2d 1158, 1159–60 (1980); *Elliott v. Blue Cross (1979),* 407 A.2d at 526.

The genesis of the current rate dispute extends from the events of May 26, 1982 when Blue Cross filed a 19.2% rate increase to be put into effect for several categories of third-quarter contracts.[1] On June 2, 1982, the Commissioner's office disallowed those rates but did so in a manner that did not conform to the statutory format. His office noted that it would review the filed rates if additional information was supplied. Blue Cross responded on June 16, 1982, disputing the need for further information and requesting a disallowance date three and a half months in the future, a time span in accord with practices previously established by the Commissioner. On June 25, 1982,

---

1. "The health care coverage provided by [Blue Cross] is established by contract with insured groups, each contract being for one year duration and providing a fixed rate for that year. The commencement and expiration of the contracts is staggered so that approximately 1/12 of the community groups commence each month. Although appellant enters into new or renewal contracts each month, it recalculates the rates four times a year, and the rate determined for the commencement of a quarter of the year is used in the contracts entered into during that quarter. Because there are approximately 150 coverage options which appellant offers, the rate for each of these options must be reviewed in determining the quarterly rates." *Blue Cross & Blue Shield, Inc. v. Elliott,* Del.Super., C.A. No. 83A–MR–16 (Taylor, J., May 24, 1983).

the Commissioner again disallowed the filing and set the disallowance date as July 1, 1982, five days later.[2]

Blue Cross then applied to Superior Court for a stay pursuant to 29 *Del.C.* § 10144.[3] Superior Court enjoined the July 1 date and ordered the Commissioner to schedule a hearing. The Court found that the 5-day period between June 25 and July 1 was not a reasonable time in which to implement the disallowance. *See Blue Cross and Blue Shield v. Elliott,* Del.Super., 449 A.2d 267 (1982).

On July 17, 1982 the parties agreed to dismiss the litigation and on July 23, 1982, in accord with the requisites of 18 *Del.C.* § 2507, the Commissioner specified his reasons for disallowance, gave notice of the Blue Cross' right to request a hearing within 20 days, and set October 1, 1982 as the disallowance date for the third-quarter rates. A hearing was requested and was held September 1 through September 8, 1982. The issues raised in the hearing concerned the merits of the disallowed rates and whether the 69 days between July 23 and October 1 constituted a reasonable period before disallowance. Blue Cross admitted that it was not prepared to meet the October 1 deadline and requested that the Commissioner grant an extension in light of undisputed testimony that the rates which would be reinstated on October 1 would be clearly inadequate since at least part of the requested increase was justified.

The Commissioner did not render a decision on these issues or respond in writing to the request for an extension of the disallowance date. His attorney did, however, deny the extension in a phone conversation. Blue Cross petitioned for a writ of manda-

mus in Superior Court, pursuant to 29 *Del.C.* § 10143[4] contending that the Commissioner had failed to perform his statutory duty to allow a reasonable period before the effective date of disallowance. It argued that the term "hearing" as used in 18 *Del.C.* § 2507 must be defined as the entire administrative process, including the ultimate decision on the issues, and that the "reasonable period" before the disallowance date must be measured from the time when a final decision on the merits of the increase is rendered. Blue Cross argued that since the Commissioner had not rendered any final decision, the reasonable period had not elapsed and the Commissioner had a duty to postpone the effective date of the rollback until he made a final decision.

The Commissioner argued that 18 *Del.C.* § 2507 does not impose a duty on him to render a final decision after the hearing (and before the rollback is effective) but only requires that a reasonable period exist between the promulgation of the rollback order and its effective date. He contended that the 69 day period was reasonable, that his July 23 order complied with the other terms of the statute, and, therefore, a writ of mandamus requiring him to do otherwise was improper. He also argued that even if a duty to come to a decision or to grant an extension were found under 18 *Del.C.* § 2507, such a duty was discretionary and not subject to compulsion under a writ of mandamus.

The Superior Court adopted the Blue Cross position in its interpretation of 18 *Del.C.* § 2507 and found that since the Commissioner failed to render a final decision he did not fulfill his statutory duty to

**2.** Although the parties have tangentially raised the issue of reasonable time in this appeal, we have not found it necessary to define that term in our resolution of the question before us. *See infra.*

**3.** 29 *Del.C.* § 10144. *Stay pending review.*
When an action is brought in the Court for review of an agency regulation or decision, enforcement of such regulation or decision by the agency may be stayed by the Court only if it finds, upon a preliminary hearing, that the

issues and facts presented for review are substantial and the stay is required to prevent irreparable harm.

**4.** 29 *Del.C.* § 10143. *Mandamus for agency action.*
Any person aggrieved by the failure of an agency to take action required of it, by law, may bring an action in the Court for an appropriate writ of mandamus.

hold a hearing and, therefore, the effective date of disallowance and rollback should have been extended. The Court also found that the discretionary nature of the Commissioner's duty did not bar application of the writ. On September 30, 1982 the Court issued its writ of mandamus to compel a final decision before the rates were rolled back, and the effective date of disallowance was stayed, leaving the higher rates in effect. *See* the unreported opinion in *Blue Cross & Blue Shield of Delaware, Inc. v. David H. Elliott,* Del.Super., C.A. No. 82M–SE–42 (O'Hara, J., September 30, 1982).[5]

This decision was appealed to this Court by the Commissioner; however, in the period before oral argument the Commissioner rendered the appeal moot by issuing a final order approving part of the rate increase filed May 26, 1982 and disallowing those premiums he did not regard as properly documented, effective June 1, 1983. Blue Cross appealed this new decision to the Superior Court and a stay of his order was granted. However, Superior Court ordered that the premiums collected after June 1, 1983, above the level approved by the Commissioner, were to be held in a reserve fund, subject to refund if the full rate is not ultimately approved. See the order in *Blue Cross & Blue Shield of Delaware, Inc. v. Elliott,* Del.Super., C.A. No. 83A–MR–16 (Taylor, J., May 24, 1983).

Although we initially agreed to attempt to find a solution to the entire controversy between these parties, in view of this further litigation in Superior Court, we now conclude that we should limit our ruling to that controversy originally presented to us. We decline to issue a declaratory judgment having prospective application.

The parties' focus in the previous and present litigation in this case involves the interpretation of the effect of 18 *Del.C.* § 2507, which states as follows:

§ 2507. *Disapproval of filing.*

If within 30 days after a specific inland rate, a special surety or guaranty on a risk specially rated by a rating organization subject to subsection (b) of § 2504 of this title has become effective, the Commissioner finds that such filing does not meet the requirements of this chapter or if upon review of any other filing, the Commissioner finds that the same does not meet the requirements of this chapter, he shall, specify the reason for his disapproval and state that a hearing will be granted within 20 days after request in writing by the insurer or rating organization which made such filing, issue an order specifying in what respects he finds that such filing fails to meet the requirements of this chapter and stating when, within a reasonable period thereafter, such filing shall be deemed no longer effective. Copies of the order shall be sent to every such insurer and rating organization. The order shall not affect any contract or policy made or issued prior to the expiration of the period set forth in the order.

This statute is a corollary to 18 *Del.C.* § 2506, which grants file and use rights to the insurer.[6] Just as the insurer may use rates subject to later approval, the Commissioner may disallow rates subject to a later decision after a hearing as to their propriety. We note that each part of this rate equation is built upon the legislative premise expressed in 18 *Del.C.* § 2501:

---

5. As a result of this decision and this subsequent appeal, the Commissioner has adopted a temporary policy of postponing rate filing disallowance dates until after the decision on hearings is rendered.

6. 18 *Del.C.* § 2506. *Effective date of filing.*
   (a) The Commissioner shall review filings as soon as reasonably possible after they have been made in order to determine whether they meet the requirements of this chapter. The filings shall be deemed to meet the require-

ments of this chapter unless disapproved by the Commissioner.
   (b) Any special filing with respect to a surety or guaranty bond required by law or by court or executive order or by order, rule or regulation of a public body, not covered by a previous filing, shall become effective when filed and shall be deemed to meet the requirements of this chapter until such time as the Commissioner rejects the filing.

"[t]he purpose of this chapter is to promote the public welfare by regulating insurance rates ... and to the end that they shall not be excessive, inadequate or unfairly discriminatory ...."

We think that the question before the Superior Court in the September 1982 litigation as to effect of § 2507 is controlled by this Court's decision in the case of *Elliott v. Blue Cross (1979)*, 407 A.2d 524. In that case we held that § 2507, as amended in 1971, permits the Commissioner "before, rather than after, a hearing [to] amend or reject the rate filing. But until he does so, an insurer may use or put into effect its new rate following filing; and the Commissioner may not alter or upset the rate filing by his order until the expiration of a reasonable period thereafter." *Id.* at 531.

In *Elliott v. Blue Cross (1979)* we addressed the extent and purpose of the changes the legislature effected in 1971:

Under the original statute, the *time* of issuing the order was clearly made to *follow* the Commissioner's hearing. Under the amended statute, the time of issuing the order is not related to the holding of a hearing or made to *follow* a hearing since those words are deleted, but now is related to and presumably occurs *after* the Commissioner finds the rate filing to be not in compliance. Further, a hearing will not be held under the amended statute until requested by the insurer (and then "will be granted within" 20 days); while prior to the amendment, a hearing by the Commissioner not only was mandatory but must precede the issuance of an order by the Commissioner specifying the legal failings of the rate filing. Thus, under the amendment the order *would be issued* preceding a hearing (rather than

following it as prior to the amendment); *and* the insurer's rate filing ceases to be effective "within a reasonable time thereafter"—which, again, appears to mean after the date of issue of the order. *Ibid* at 530.

■ Thus, we think the Superior Court made an incorrect interpretation of the language of § 2507 in the September 30, 1982 opinion. This section does not speak to the Commissioner's duties in the course of or as a result of a hearing; it is limited to mandating that the Commissioner provide notice of a party's right to request such a hearing within 20 days. It is silent as to the mechanics of the hearing; no time frame for duration or result is established.

■ Although 18 *Del.C.* § 2507 does encourage prompt decisions,[7] 18 *Del.C.* § 2501 speaks directly to the Commissioner's duty in regard to rate decisions. Section 2501 states that the Commissioner must regulate rates "to the end that they shall not be excessive, inadequate or unfairly discriminatory". Therefore, when the Commissioner is confronted with a case similar to that before us, in which the hearing evidence reveals adequate justification for at least a portion of the filed increases and perhaps potential justification for the remainder, the Commissioner would violate his general duties under § 2501 by enforcing a disallowance which has the effect of rolling the rates back to a clearly "inadequate" level. However, under the terms of the same statutory section, he cannot permit continued promulgation of rates which he has determined to be unjustified. Finally, he cannot amend a filing to produce rates which are clearly discriminatory to any insurer.[8]

7. 18 *Del.C.* § 2507 mandates that the Commissioner review rates within 30 days of filing for disallowance purposes and convene hearings within 20 days of a request. *See also* 29 *Del.C.* § 10121—10129. *Compare* 26 *Del.C.* § 307, speedy determination in rate proceedings by the Public Utility Commission.

8. In respect to discriminatory rates, we take judicial notice that Blue Cross is a non-profit corporation competing for subscribers against

profit oriented companies. It has precariously low reserves and cannot recoup losses resulting from inadequate rates from profits, as can some of its competitors. Thus, Blue Cross must subsequently raise its premiums to cover past losses and, perhaps, thereby suffer a competitive disadvantage, to the ultimate detriment of that same marketplace which Title 18 regulates and protects.

■ However, the issue before us on this appeal is narrower than the Commissioner's § 2501 general duties. The error in the September, 1982 opinion was the result of Blue Cross' attempt to stretch the notice provisions of § 2507 to cover a situation to which that section is not applicable. The Commissioner has a statutory right to disallow rates before a hearing, *Elliott v. Blue Cross (1979)*, 407 A.2d at 530, although § 2501 prevents him from reinstating rates which are clearly excessive, inadequate, or discriminatory. We hold that since the Commissioner had complied with § 2507 in this case, there was no further duty to compel, and a writ of mandamus should not have been issued. The Commissioner was not required to make a final decision on the merits of the rate increase before the effective date of a disallowance and rollback of filed rates.

The decision of the Superior Court is REVERSED.