The Honorable David N. LEVINSON, Insurance Commissioner of the State of Delaware, Appellee Below, Appellant,

v.

DELAWARE COMPENSATION RATING BUREAU, INC., a Delaware corporation, Appellant Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 9, 1992.
Decided: Nov. 25, 1992.
Rehearing Denied: Dec. 16, 1992.

Peter O. Jamison, III, Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellant.

Thomas P. Preston and Bonnie L. Wolfgang, Duane, Morris, Heckscher, Wilmington, for appellee.

Before VEASEY, C.J., MOORE and WALSH, JJ.

WALSH, Justice:

This is an appeal by David N. Levinson, the Insurance Commissioner of the State of Delaware ("Commissioner"), from a decision of the Superior Court that vacated an order of the Commissioner which had rejected an application for an increase in worker's compensation insurance. The application had been filed by the appellee, Delaware Compensation Rating Bureau, Inc. ("DCRB"), seeking a 20.6 percent increase from Delaware rate payers.

The Commissioner asserts that the Superior Court committed certain errors of law and disregarded substantial evidence, supporting the Commissioner's decision. We find it unnecessary to address all claims on appeal, however, because we conclude that the matter was presented to the Superior Court prematurely without requiring DCRB to exhaust its administrative remedy before the Commissioner. Accordingly, we reverse and remand for completion of the administrative process.

## I

The facts in this case are largely undisputed. DCRB is licensed to file rates with the Commissioner on behalf of insurers writing workers' compensation insurance in Delaware pursuant to 18 *Del.C.* Ch. 25. On March 2, 1990, DCRB filed an application with the Commissioner, requesting a 20.6 percent increase in workers' compensation insurance rates ("March application").

Upon receipt of the March application by the Department of Insurance ("Insurance Department"), it was assigned a file number and forwarded to Everett Gale ("Gale"), an actuary for the Insurance Department, for review in accordance with established Insurance Department practices. Gale informed Catherine Mulholland, the Department's Director of the Bureau of Examination, Rehabilitation and Guarantee, that the March application had been submitted and she, in turn, notified the Commissioner.

From March 2 through April 12 of 1990, Gale reviewed the merits of the March application and discussed the supporting data with representatives of DCRB. On April 12, 1990, Gale wrote to Timothy Wisecarver ("Wisecarver"), the President of DCRB, suggesting certain modifications to the filing that would result in a rate increase of 14.6 percent. That same day Wisecarver replied that DCRB considered a 14.6 percent increase a "reasonable compromise." Although this dialogue is undisputed, its legal effect is a matter of contention between the parties. DCRB claims that the effect of the April 12, 1990 correspondence between Gale and Wisecarver was to amend the March application so that, as of April 12, 1990, DCRB was requesting a 14.6 percent rate increase. The Commissioner claims that the exchange of correspondence had no effect on the March application and, thus, no formal filing reflecting the lower rate was before the Commissioner.

Prior to the filing of the March application, DCRB and the Commissioner had been discussing the adoption of "competitive rate filing." Competitive rate filing would require DCRB to submit separate rate filings for certain of its member insurers so that rates would reflect the actual loss payment experience and the expenses of individual insurers. DCRB, however, refused to implement competitive rate filing until the statutes governing rate filing were amended to specifically provide for such filings. On March 22, 1990, legislation providing for competitive rate filing was introduced in the Delaware House of Representatives as H.B. 554. DCRB claims that the Commissioner attempted to

use his rate approval authority as leverage to encourage DCRB to support H.B. 554. Apparently, DCRB refused to take any position regarding H.B. 554.

On June 5, 1990, the Commissioner issued an order disapproving the March application ("Commissioner's Order"). The Commissioner's Order recited that the disapproval was based on the Commissioner's determination that the proposed rate increase of 20.6 percent was excessive and did not reflect the actual loss experience of insurers writing in Delaware. As noted earlier, the Commissioner did not consider the correspondence between Gale and Wisecarver on April 12, 1990 to have the effect of amending DCRB's rate application. DCRB claims that the Commissioner, in rejecting the rate application, did not consider or review any aspect of the March application, Gale's analysis of the March application or the "amended filing" of April 12, 1990. In addition, DCRB claims that the Commissioner did not base his disapproval on any of the factors set forth in 18 *Del.C.* § 2503.

In conformity with 18 *Del.C.* § 2507, the Commissioner's Order of disapproval recited that within twenty days after a request in writing by DCRB a hearing would be held on the March application. DCRB did not request such a hearing. Instead, DCRB filed a complaint in Superior Court on July 11, 1990, seeking a declaratory judgment that the Commissioner's Order was void. Subsequently, DCRB dismissed its action for declaratory judgment and filed an appeal from the Commissioner's Order pursuant to 29 *Del.C.* § 10142. The Commissioner stipulated to the dismissal and the filing of the appeal. The parties thereafter supplemented the record on appeal through deposition testimony and documents.

On February 14, 1992, the Superior Court vacated the Commissioner's Order and granted DCRB a 14.6 percent increase. The Superior Court ruled that the Commissioner had failed to consider the factors set forth in 18 *Del.C.* §§ 2503, 2506 and 2507 in reviewing the March application as amended on April 12, 1990.

The Superior Court denied the Commissioner's motion to stay the increase on rates pending an appeal and this Court affirmed the denial of the stay.

## II

The Commissioner has advanced several claims of error directed to the Superior Court's decision. He claims that the Superior Court misapplied the legal standards which govern the determination of rate applications by the Insurance Department. He further asserts that there was substantial evidence to support the Commissioner's rejection of the March application and the Superior Court erred in disregarding that evidence. It is unnecessary to consider the merits of these claims, however, since we conclude that any judicial review of the rate proceeding was premature and ill-advised until the parties had completed the administrative process.

 Whether the Superior Court erred in failing to apply the doctrine of exhaustion of administrative remedies presents a mixed question of fact and law. Generally, our review would be limited to determining whether the lower court ruling is supported by substantial evidence and free from legal error. *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671, 673 (1972). Absent an abuse of discretion, the decision of the lower court must be affirmed. *Id.* However, where, as here, the trial court declined to apply the exhaustion doctrine, the issue is one of construction of the law and the application of the law to undisputed facts. Thus, our review is plenary. *E.I. du Pont de Nemours Co., Inc. v. Shell Oil Co.*, Del.Supr., 498 A.2d 1108, 1113 (1985).

## III

Before addressing the dispositive question of whether DCRB should be required to exhaust its administrative remedy before the Commissioner, we consider the unusual circumstances which prompted the Superior Court to decline to rule directly on the exhaustion matter. The Superior Court ruled that the Commissioner had waived

his right to assertion of the exhaustion doctrine through a prehearing stipulation.

The facts leading to the adoption of the stipulation on September 4, 1990 are somewhat convoluted. As stated earlier, on June 5, 1990, the Commissioner issued an order disapproving the March application. In conformity with 18 *Del.C.* § 2507, the Commissioner's Order recited that within twenty days after a request in writing by DCRB, a hearing would be held on the March application. DCRB did not request such a hearing. Instead, DCRB filed a complaint in Superior Court on July 11, 1990, seeking a declaratory judgment that the Commissioner's Order was void.

On August 9, 1990, the Commissioner filed a motion to dismiss DCRB's declaratory judgment action. In his motion to dismiss, the Commissioner argued that DCRB's declaratory judgment complaint should be dismissed because it was an inappropriate attempt to avoid the judicial appeal procedure specifically created by 29 *Del.C.* § 10142. The Commissioner further argued that, in any event, any judicial proceeding was premature since DCRB had failed to exhaust its administrative remedy.

On September 4, 1990, the parties entered into a stipulation, later approved by the Court. This stipulation, *inter alia*, provided: (1) for the voluntary dismissal of all motions, including the Commissioner's motion to dismiss; (2) for DCRB's abandonment of its request for declaratory judgment and the filing of an appeal of the Commissioner's Order pursuant to 29 *Del.C.* § 10142; and (3) that during the pendency of the appeal DCRB would not be required to request or attend a hearing before the Commissioner pursuant to 18 *Del.C.* § 2507. Finally, the parties agreed

to reciprocal discovery and a briefing schedule.

In his subsequent brief to the Superior Court, the Commissioner argued that DCRB's appeal under 29 *Del.C.* § 10142 should be dismissed because DCRB had failed to exhaust its administrative remedy. The Superior Court, however, interpreted the stipulation as a waiver by the Commissioner of his right to proffer an exhaustion defense.[1] In effect, the Superior Court ruled that the parties had stipulated that the Superior Court should ignore the doctrine of exhaustion of administrative remedies. In our view, this interpretation of the legal effect of the stipulation was incorrect.

This Court has held that "judicial admissions which are binding on the tendering party are limited to factual matters in issue and not to statements of legal theories or conceptions." *Blinder, Robinson & Co., Inc. v. Bruton,* Del.Supr., 552 A.2d 466, 474 (1989) (citing *New Amsterdam Casualty Co. v. Waller,* 4th Cir., 323 F.2d 20, 24 (1963) *cert. denied,* 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed.2d 981 (1964)). Furthermore, "when counsel speaks of legal principles ... he makes no judicial admission ... which would prevent the court from applying to the facts disclosed by the proof, the proper legal principles as the court (sic) understands them." *Id.* The same rule governs party stipulations.

In stipulating to the dismissal of the declaratory judgment action and substituting in its place an appeal under the Administrative Procedures Act, 29 *Del.C.* § 10142, the Commissioner was simply agreeing to place the Superior Court proceeding in its proper procedural setting. An appeal from a case decision of the Commissioner can occur only within the context

---

1. THE COURT: [T]he [Commissioner] has alleged in response that [DCRB] hasn't exhausted [its] administrative remedies and that the Commissioner's decision was supported by substantial evidence....

Given the evidence that is undisputed, given the arguments of the parties, and after considering the record as a whole, I find that as a matter of law the parties agreed in the stipulation and order which I approved on September 4, 1990 to resolve this dispute by means of

an appeal, pursuant to Title 29 of the Delaware Code, Section 10142; and that having made that agreement, the State, the Commissioner, waived any right it had to assert argument that [DCRB] was required to exhaust its administrative remedies in a form of hearing before the Commissioner pursuant to Section 2507 of Title 18.

Transcript of Superior Court's Ruling at 4–5 (Feb. 7, 1992).

of the Administrative Procedures Act. Since an adequate legal remedy existed under the Act, it is clear that the earlier filed declaratory judgment action was unauthorized. Whether an appeal under 29 *Del.C.* § 10142 is premature and, thus, subject to dismissal, however, is a distinct question and one which the stipulation did not purport to address. In view of the significant briefing of the exhaustion question by both parties in the Superior Court, clearly the Commissioner was not under the impression that he was waiving the exhaustion defense. For the Superior Court to conclude to the contrary and refuse to apply the exhaustion doctrine was error.

## IV

■ Delaware has adopted the doctrine of exhaustion of administrative remedies. *James Julian, Inc. v. Hall*, Del.Super., 349 A.2d 750, 752–753 (1975); *Murphy v. T.B. O'Toole, Inc.*, Del.Super., 76 A.2d 313, 314 (1950). A judicially created rule, the doctrine requires that where a remedy before an administrative agency is provided, relief must be sought by exhausting this remedy before the courts will either review any action by the agency or provide an independent remedy. 2 Am.Jur.2d *Administrative Law* § 595 (1962); *see also* 73 C.J.S. *Public Administrative Law and Procedure* § 38 (1983). The policy which sustains the doctrine is one of maintaining the proper relationship between the courts and administrative agencies. 2 Am.Jur.2d *Administrative Law* § 595 (1962). It accomplishes this by: (1) favoring a preliminary administrative sifting process, especially when matters at issue are largely within the expertise of the involved agency; (2) avoiding interference with the administrative agency by withholding judicial action until the administrative process has run its course; and (3) preventing attempts to burden the courts by a resort to them in the first instance. *Id.* It applies only where a claim must be initiated before an administrative agency which has exclusive jurisdiction over the matter and is able to provide an adequate remedy. *Eastern Shore Natural Gas Co. v. Stauffer Chemical Co.*, Del.Supr., 298 A.2d 322, 325 (1972) (doc-trine of exhaustion of administrative remedies requires that a claim be initiated before an administrative agency prior to judicial review); *Scarborough v. Mayor and Council of the Town of Cheswold*, Del.Ch., 303 A.2d 701, 703–704 (1973) (doctrine of exhaustion of administrative remedies only applies where the administrative remedy is exclusive of any judicial remedy and when the administrative remedy is "substantially equivalent" to that sought in court).

■ The doctrine of exhaustion of administrative remedies is to be distinguished from the doctrine of primary administrative jurisdiction, which applies where "a claim is originally cognizable in a court of law or equity but referral to an agency competent to rule preliminarily on issues which fall within its regulatory powers is authorized." *Eastern Shore Natural Gas Co.*, 298 A.2d at 325 (quoting *Webb v. Diamond State Telephone Co.*, Del.Ch., 237 A.2d 143, 145 (1967)). Application of the doctrine of primary administrative jurisdiction results in staying or abstention of the judicial process until the proper administrative agency has made its ruling, while application of the doctrine of exhaustion of administrative remedies may result in dismissal from the judicial forum. *Id.*

■ In order for the doctrine of exhaustion of administrative remedies to apply to this case, DCRB must have been required to initially file its rate application with the Commissioner. *Eastern Shore Natural Gas Co.*, 298 A.2d at 325. An examination of 18 *Del.C.* Chapter 25 and 29 *Del.C.* Chapter 101 reveals that DCRB was so required. Since 1947, the Commissioner has been charged with the duty of regulating insurance rates. 46 *Del.Laws*, Ch. 161; 18 *Del.C.* § 2501 ("The purpose of this chapter is to promote the public welfare by regulating insurance rates and to the end that they shall not be excessive, inadequate or unfairly discriminatory and to authorize and regulate cooperative action among insurers in rate making and in other matters within the scope of this chapter.") DCRB's authorization to file rates is established by Chapter 25. 18 *Del.C.* §§ 2510 and 2511.

DCRB is required by law to file every rate and every modification of a rate with the Commissioner. 18 *Del. C.* § 2504(a) (Every insurer, unless exempted, is required to file with the Commissioner "every manual, minimum, class rate, rating schedule or rating plan and every other rating rule, and every modification of any of the foregoing which it proposes to use."). Finally, 29 *Del. C.* § 10142(a), which is applicable to the Commissioner through 29 *Del. C.* § 10161(7), provides for the appeal of case decisions[2] by administrative agencies to the Superior Court.

The Commissioner, as the administrative body, also must have had exclusive jurisdiction to determine rates in order for the doctrine of exhaustion of administrative remedies to apply. *Scarborough,* 303 A.2d at 703–704. In *Scarborough,* the plaintiffs were seeking to enjoin the construction of a drive-in theater by the defendant. The defendant claimed the Court of Chancery should dismiss the action because the plaintiffs had failed to pursue their action before the Kent County Board of Adjustment. However, the statutory scheme involved in *Scarborough* allowed for the plaintiffs to go before either the Kent County Board of Adjustment or, "in addition to other remedies provided by law, institute injunction, mandamus, abatement, or any other appropriate action or actions, proceeding or proceedings." *Id.,* (quoting 9 *Del. C.* § 4919(d)). The court thus held that, since plaintiffs were not even required to pursue an administrative remedy, the doctrine of exhaustion of administrative remedies did not apply. *Id.* at 703–704.

■ An examination of 18 *Del. C.* Chapter 25 and 29 *Del. C.* Chapter 101 reveals an entirely different statutory scheme from that in *Scarborough,* a scheme in which the Commissioner has sole jurisdiction to determine rates. Once again, the Commissioner is mandated by statute to regulate insurance rates. 18 *Del. C.* § 2501. The Com-

missioner is required to "review filings as soon as reasonably possible . . . to determine whether they meet the requirements of this chapter." 18 *Del. C.* § 2506(a). If the Commissioner finds that a filing does not meet statutory requirements he is required to: (1) issue an order specifying the reasons for his disapproval; (2) state that a hearing will be granted within twenty days after a written request for a hearing by the insurer; and (3) state when, within a reasonable period after entry of his order, the disapproved rate shall no longer be effective, if it has previously gone into effect. 18 *Del. C.* § 2507; *Elliott v. Blue Cross and Blue Shield of Delaware, Inc.,* Del. Supr., 407 A.2d 524, 530 (1979). The only statutory authority for judicial involvement in the rate making process is through appellate review of an agency case decision or the granting of a writ of mandamus if the Commissioner fails to take any action required by law. 29 *Del. C.* §§ 10142 and 10143; *Elliott,* 407 A.2d at 531. Thus, the Commissioner has sole original jurisdiction to determine rates.

Finally, in order for the doctrine of exhaustion of administrative remedies to apply, the remedy available at the administrative level must be substantially equivalent to that sought in a judicial forum. *Scarborough,* 303 A.2d at 704. In this case, DCRB is seeking judicial approval of its application for a rate increase, relief which was clearly within the purview of the Commissioner's authority.

## V

■ Having determined that the doctrine of exhaustion of administrative remedies applies to this case, we next address the question of what standard governs its application. Is application of the doctrine of exhaustion of administrative remedies by a court a matter of jurisdiction or discretion? A Delaware court has never expressly decided this precise question, although

---

**2.** " 'Case' or 'case decision' means any agency proceeding or determination that a named party as a matter of past or present fact, or of threatened or contemplated private action, is or is not in violation of a law or regulation. . . . Such

administrative adjudications include, without limitation, those of a declaratory nature respecting the payment of money or resulting in injunctive relief." 29 *Del. C.* § 10102(3).

the treatment of the doctrine in both *Julian* and *Scarborough* suggests that neither court believed it confronted a threshold determination of jurisdiction. Other jurisdictions which have decided the discretion/jurisdiction issue are not in accord. 2 Am.Jur.2d *Administrative Law* § 600 (1962); *see also* 73 C.J.S. *Public Administrative Law and Procedure*, § 38(c) (1983). An examination of the authorities and Delaware law reveals that, in Delaware, application of the doctrine of exhaustion of administrative remedies is a matter of judicial discretion.

The seminal case for treating the doctrine of exhaustion of administrative remedies as jurisdictional is *Abelleira v. District Court of Appeal, Third District*, 17 Cal.2d 280, 109 P.2d 942 (1941). In *Abelleira*, the California Supreme Court held that, in order to prevent the destruction of the rule requiring exhaustion of administrative remedies, "we are necessarily led to the conclusion that exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts." *Id.*, 109 P.2d at 949–950. The Court emphasized its jurisdictional position just two years later in *Alexander v. State Personnel Board*, 22 Cal.2d 198, 137 P.2d 433 (1943) by ruling that "if a rehearing is available it is an administrative remedy to which the petitioners must first resort in order to give the board an opportunity to correct any mistakes it may have made." *Id.*, 137 P.2d at 434. Although the California Supreme Court was not the first court to view exhaustion of administrative remedies as a jurisdictional barrier,[3] its position was in-

fluential and a great number of jurisdictions followed California's lead.[4]

Even those jurisdictions which view exhaustion of administrative rule remedies as jurisdictional recognize exceptions which permit direct access to the judicial forum. In *Prince George's County v. Blumberg*, 288 Md. 275, 418 A.2d 1155 (1980), the court, while directing recourse to an administrative remedy, noted certain exceptions which might incline the court to accept jurisdiction notwithstanding the existence of an administrative remedy. Those exceptions include instances: in which a legislative body has concluded that exhaustion was not a precondition to judicial action; where the constitutionality of the administrative power has been called into question; where the agency had required a party to proceed in an unauthorized manner; where the administrative remedy is not adequate; and where the issues pending before the judicial body invoke only tangentially the expertise of the administrative body. *Id.*, 418 A.2d at 1161. *See also, Watergate II Apartments v. Buffalo Sewer Authority*, 46 N.Y.2d 52, 412 N.Y.S.2d 821, 824, 385 N.E.2d 560, 563 (1978); *Amburgey v. Miller*, 173 Ind.App. 116, 362 N.E.2d 869, 870–871 (1977).

Many courts have held that application of the doctrine of exhaustion of administrative remedies is at the court's discretion.[5] However, in order to preserve the integrity of the administrative process, these same courts have simultaneously created a strong presumption in favor of requiring exhaustion. *See Brunetti v. Borough of New Milford*, 68 N.J. 576, 350 A.2d 19, 25 (1975) ("Therefore, while it is neither a

---

**3.** The United States Supreme Court, in its earliest decisions in this area, adopted a jurisdictional position. *See United States v. Sing Tuck*, 194 U.S. 161, 170, 24 S.Ct. 621, 623, 48 L.Ed. 917 (1904); *First National Bank of Greeley v. Board of Commissioners of Weld County, Colorado*, 264 U.S. 450, 44 S.Ct. 385, 68 L.Ed. 784 (1924) (applying Colorado law); *Porter v. Investors' Syndicate*, 286 U.S. 461, 468, 52 S.Ct. 617, 619, 76 L.Ed. 1226 (1932); and *Myers v. Bethlehem Shipbuilding Corporation*, 303 U.S. 41, 47–51, 58 S.Ct. 459, 461–64, 82 L.Ed. 638 (1938).

**4.** Including Arkansas, Colorado, Connecticut, the District of Columbia, Florida, Indiana, Ken-

tucky, Maryland, Missouri, New York, Oklahoma, Pennsylvania and West Virginia. 2 Am. Jur.2d *Administrative Law* § 595 (1962); and 73 C.J.S. *Public Administrative Law and Procedure* § 38 (1983).

**5.** Including the United States Supreme Court, several circuits of the United States Court of Appeals, Illinois, Kansas, Maine, New Hampshire, New Jersey, Oregon, South Carolina and Wisconsin. 2 Am.Jur.2d *Administrative Law* § 595 (1962); and 73 C.J.S. *Public Administrative Law and Procedure* § 38 (1983).

jurisdictional nor an absolute requirement, there is nonetheless a strong presumption favoring the requirement of exhaustion of [administrative] remedies."); *see also Levesque v. Inhabitants of the Town of Eliot*, Me.Supr., 448 A.2d 876, 878 (1982). The presumption can only be overcome by a showing that the "interest of justice so requires." *Brunetti*, 350 A.2d at 25. The discretionary courts have recognized situations in which the interest of justice requires overcoming the presumption favoring exhaustion of administrative remedies, a list which is strikingly similar to the exceptions crafted by the jurisdictional courts.

> [E]xhaustion of remedies will not be required where administrative review will be futile, where there is a need for prompt decision in the public interest, where the issues do not involve administrative expertise or discretion and only a question of law is involved and where irreparable harm will otherwise result from denial of immediate judicial relief.

*Id.* at 25–26.

The end result is that, through the adoption of a strong presumption in favor of proceedings before the administrative body, even those courts which view the requirement of exhaustion as discretionary have severely limited the scope of initial judicial intervention.

■ Since nothing in the Delaware Constitution nor the Delaware Code expressly establishes the exhaustion of administrative remedies as a prerequisite to the exercise of judicial authority, we decline to view exhaustion as a jurisdictional threshold. We endorse, instead, the approach of the New Jersey Supreme Court, exemplified by *Brunetti*. In order to allow administrative bodies to perform their statutory functions in an orderly manner without preliminary interference from the courts, a strong presumption exists favoring the exhaustion of administrative remedies.

## VI

■ Although we view the question of whether a litigant should be required to exhaust an administrative remedy as a matter for discretionary determination, we are unable to apply an "abuse of discretion" standard of review in this case because the Superior Court decided not to apply the doctrine. As previously noted, the Superior Court ruled, erroneously, that the Commissioner had waived that defense in stipulating to the filing of an appeal under 29 *Del.C.* § 10142. On appeal, that ruling assumes an unusual posture. Ordinarily, we would decline to review a controverted issue in the first instance but we are satisfied that the exhaustion question was "fairly presented" at the trial level when it was briefed by both parties. Supr.Ct. R. 8. Moreover, in view of the extended delay which has occurred in this matter, both at the administrative and trial level, and in the light of the strong public interest in the speedy and efficient determination of rate filings, we will resolve the exhaustion question without remand.

■ As stated earlier, there is a strong presumption favoring the requirement of exhaustion of administrative remedies. However, exhaustion will not be required where administrative review would be futile, where there is a need for prompt decision in the public interest, where the issues do not involve administrative expertise or discretion or where irreparable harm would result from denial of immediate judicial relief. *Brunetti*, 350 A.2d at 25–26. None of these exceptions apply in this case.

DCRB maintains that the Commissioner's support of competitive rate filing and his preliminary disapproval of the March application strongly suggest that an attempt by DCRB to obtain administrative review would have been futile. We do not share that view of the record.

■ The Commissioner's support of competitive rate filing is irrelevant to whether an attempt by DCRB to obtain administrative review would have been futile. Any statement by the Commissioner to the effect that the March application would not be granted without competitive rate filing was merely another way of stating that a rate increase was not appropriate for all of DCRB's insurers. Where a

rate increase is not appropriate for all of the insurers involved in a group rate filing, the Commissioner may disapprove of the filing in its entirety. *Long v. National Bureau of Casualty Underwriters*, 209 Tenn. 435, 354 S.W.2d 255 (1962).

 Nor does the expression of disapproval of the rates as filed justify the conclusion that a hearing before the Commissioner would be futile. First, the statutory scheme governing rate review specifically provides that the Commissioner may disapprove of a rate filing prior to a hearing. 18 *Del.C.* § 2507. Second, any argument that the Commissioner should be disqualified from serving as an adjudicator in any further proceedings on the March application because of comments made by the Commissioner adverse to the application must overcome what this Court has held is a "strong presumption" of honesty and integrity in administrative adjudicators. *Blinder, Robinson & Co. v. Bruton*, Del.Supr., 552 A.2d 466, 473 (1989).

It is not unusual for a regulatory official who may be called upon to adjudicate a dispute between the agency that he or she heads and a regulated entity to assume a pre-hearing position adverse to the regulated entity. The United States Supreme Court has consistently held that pre-hearing comments by an administrative adjudicator that are adverse to the position of the regulated entity do not constitute grounds for the disqualification of that adjudicator. *Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 700–03, 68 S.Ct. 793, 803–05, 92 L.Ed. 1010 (1948) (pre-hearing comments by the Federal Trade Commission to the U.S. Congress that a pricing system used by cement companies constituted a restraint on trade did not disqualify the Commission from sitting as an adjudicator at a hearing to determine whether the cement companies pricing system constituted a restraint on trade); and *United States v. Morgan*, 313 U.S. 409, 420–21, 61 S.Ct. 999, 1003–04, 85 L.Ed. 1429 (1941) (comments by the Secretary of Agriculture

that suggested the Secretary had prejudged the rates that could be charged by market agencies at the Kansas City Stockyards did not disqualify the Secretary from sitting as an adjudicator at a hearing to determine the rates that could be charged by the market agencies).

 Exhaustion of administrative remedies will not be required where there is a need for prompt decision in the public interest. *Brunetti*, 350 A.2d at 26. This exception does not apply here. The statute governing the filing of insurance rates allows the insurer to implement the new rate before it actually obtains approval. 18 *Del.C.* § 2506. However, if the rate is ultimately disapproved the insureds will receive credit for any excess rates charged. Thus, both the insurer and the insured are protected and there is no need for a judicial decision in advance of the completion of the administrative process.

 Exhaustion of administrative remedies will also not be required where the issues do not involve administrative expertise or discretion. *Brunetti*, 350 A.2d at 26. It would be difficult to imagine a situation requiring more administrative expertise than that of insurance rate making. There is a longstanding legislative policy that insurance rates should be reviewed administratively by the Insurance Commissioner. 46 *Del.Laws*, Ch. 161. The Commissioner and his staff, have extensive experience in the regulation of the business of insurance, are intimately familiar with the operation of insurance companies and possess the type of expertise that is essential to an evaluation of proposed rates.[6]

 Rate-making is not a judicial function and the role of the courts is one of review for error of law or lack of substantial evidence. *Delmarva Power & Light Co. v. Public Service Commissioner*, Del. Supr., 508 A.2d 849, 851–852 (1986); *Insurance Services Office v. Wahland*, 117 N.H. 712, 378 A.2d 743, 746 (1977) ("Due to the expertise required in the field [of insurance

---

**6.** 29 *Del.C.* § 10142(d) enjoins the reviewing court to "take due account of the experience and specialized competence" of the administrative agency "when factual determinations are at issue."

rates], courts should be reluctant to substitute their judgment for that of the commissioner"); *Attorney General v. Insurance Commissioner of the State of Michigan,* 117 Mich.App. 186, 323 N.W.2d 645, 649 (1982) ("... judicial review of insurance rate-making is limited because rate-making, as a technical and highly complex process requiring much expertise, is not a judicial function").

■■■■ Finally, exhaustion of administrative remedies will not be required where irreparable harm would result from denial of immediate judicial relief. *Brunetti,* 350 A.2d at 26. There is no danger that DCRB will suffer irreparable harm from a denial of judicial relief. DCRB is not seeking anything from the judicial system that it could not obtain from the Commissioner subject to later judicial review. In addition, as noted, the statute governing the filing of insurance rates allows the insurer to implement the new rates before it actually obtains approval, 18 *Del.C.* § 2506, and DCRB has availed itself of that opportunity. Indeed, during the pendency of the Superior Court proceedings and while this appeal has been pending, DCRB has continued to realize the full benefit of its proposed rates.

We conclude that the Superior Court erred in disregarding the Commissioner's contention that DCRB must first exhaust its administrative remedy. Given the strong presumption in favor of such exhaustion and in the absence of any compelling argument to the contrary, DCRB should have been required, as a matter of law, to exhaust its administrative remedy.

This decision of the Superior Court is REVERSED and this matter is REMANDED to the Superior Court with direction to FURTHER REMAND the DCRB rate application to the Insurance Commissioner for further proceedings under 18 *Del.C.* Ch. 25.