# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GLEN ALLEN FARM, LLC, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2019-0425-PAF |
| | ) | |
| NEW CASTLE COUNTY, a | ) | |
| Political subdivision of the State | ) | |
| of Delaware, and MATTHEW S. | ) | |
| MEYER, individually and in his | ) | |
| official capacity as the County | ) | |
| Executive for New Castle County, | ) | |
| TRACY SURLES, individually | ) | |
| and in her official capacity as | ) | |
| the General Manager of Public | ) | |
| Works for New Castle County; and | ) | |
| RICHARD E. HALL, individually | ) | |
| and in his official capacity as the | ) | |
| General Manager of Land Use for | ) | |
| New Castle County, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION

Date Submitted: June 3, 2020
Date Decided: September 29, 2020

Sidney S. Liebesman, E. Chaney Hall, and Wali W. Rushdan, FOX ROTHSCHILD LLP, Wilmington, Delaware; *Attorneys for Petitioner*.

Max B. Walton and Lauren P. DeLuca, CONNOLLY GALLAGHER LLP, Wilmington, Delaware; Brian J. Merritt, NEW CASTLE COUNTY OFFICE OF LAW, New Castle, Delaware; *Attorneys for Respondents*.

**FIORAVANTI, Vice Chancellor**

Nearly two decades ago, a group of property owners in southern New Castle County sought to develop their property into a residential development. The property owners entered into an agreement with developer Toll Brothers, Inc. ("Toll Brothers") that contained several contingencies, one of which was obtaining sewer service from the County. The County rejected the development application. Toll Brothers and the owners of one of the properties in the group filed an action against the County and certain County officials in the United States District Court for the District of Delaware seeking to compel the County to provide sewer service to their property (the "Federal Action"). The parties to the Federal Action settled their dispute in 2010, which is memorialized in a settlement agreement with the County (the "Settlement Agreement"). The Settlement Agreement obligates the County to build a sewer main and provide sanitary sewer service to all of the properties if certain conditions are met. The County's obligations to build the sewer main expire on July 1, 2021, unless certain conditions in the Settlement Agreement are satisfied by that date.

Petitioner Glen Allen Farm, LLC ("Petitioner" or "GAF") was among the property owners that had signed on to the Toll Brothers development agreement. GAF was not a party in the Federal Action and is not a signatory to the Settlement Agreement. Nevertheless, GAF's property would be among the properties obtaining sanitary sewer service if the County were to provide sewer service under the terms

2

of the Settlement Agreement. In this action, GAF seeks to enforce the Settlement Agreement against the County and certain County government officials (collectively, "Respondents"), contending that GAF is a third-party beneficiary to that agreement. GAF makes no secret of its objective:

> Petitioner has been approached by one or more prospective purchasers of the Property whom have indicated that they would be willing to purchase the Property, at a premium, if Petitioner can confirm the County still intends to honor its obligation under the Settlement Agreement to provide sanitary sewer service to the Property.

Compl. ¶ 31. GAF seeks an order compelling the County to perform under the Settlement Agreement if GAF, a purchaser of its property, or a developer other than Toll Brothers satisfies the terms of the Settlement Agreement that obligate the County to provide sanitary sewer service to GAF's property. Respondents have moved to dismiss the complaint. Their primary argument is that the Petitioner's claims are not ripe for resolution. This Opinion resolves the motion to dismiss in favor of Respondents.

## I.    BACKGROUND

The facts recited in this opinion are drawn from Petitioner's Verified Amended Complaint ("Complaint" or "Compl."), documents incorporated by reference or integral thereto, and matters to which the Court may take judicial notice.

### A.    The Parties

GAF is a Delaware limited liability company and the owner of record of approximately 141 acres of undeveloped farmland located on the northern side of Port Penn Road in New Castle, Delaware (the "Property").[1]

Petitioner seeks relief from the County and three County government officials:  Respondent Matthew S. Meyer (individually and in his capacity as the County Executive for the County), Respondent Tracy Surles (individually and in her capacity as the General Manager of Public Works for the County), and Respondent Richard E. Hall (individually and in his capacity as the General Manager of Land Use for the County).[2]

Under Delaware law, the County has "all powers which, under the Constitution of [Delaware], it would be competent for the General Assembly to grant by specific enumeration, and which are not denied by statute[.]"[3]  The County has

---

[1] Compl. ¶ 1.

[2] *Id.* ¶¶ 2-5.

[3] 9 *Del. C.* § 1101.

4

authority over zoning and the power to regulate land use within the territory of New Castle County.[4] The County's authority includes the power "to act upon all matters pertaining to sewers, sewerage disposal plants, trunk line sewers and sewerage systems generally."[5]

### B. The Planned Development of the Port Penn Assemblage

The Property is part of a sanitary sewer district for the southern portion of the County designated as the County Southern Sewer Service Area (the "SSSA").[6] In 2003, the County Council, the legislative branch of the County government, passed a resolution affirming the County's commitment to construct a sewer system in the SSSA.[7]

---

[4] *Id.* § 2602(a) ("[T]he County Council may divide the territory of New Castle County into districts or zones of such number, shape, or area as it may determine, and within such districts . . . may regulate the erection, construction, reconstruction, alteration, and uses of buildings and structures and the uses of land.").

[5] *Id.* § 1521(a)(1).

[6] Compl. ¶ 7.

[7] *Id.* ¶ 8.

In the early 2000s, Petitioner and four other owners of contiguous land entered into a development agreement with Toll Brothers to create a large residential home tract within the SSSA named the "Port Penn Assemblage."[8] The Toll Brothers development agreement with the Port Penn Assemblage was subject to contingencies, including that the County would provide sewer service sufficient for the development.[9] According to the Complaint, Toll Brothers and the Port Penn Assemblage, including Petitioner, relied upon representations from the County that the SSSA would receive sewer service.[10]

After developing engineering plans and conducting due diligence, Toll Brothers submitted a land development application to the County for the Port Penn Assemblage (the "Application").[11] The County rejected the Application.[12] Toll Brothers and the property owners of the Port Penn Assemblage pressed the County to make public sewer service available for the Port Penn Assemblage.[13]

In November 2007, Toll Brothers and Gary and Gale Warren, the owners of the Warren Farm—a property in the Port Penn Assemblage—filed litigation against

---

[8] *Id.* ¶¶ 10-11.

[9] *Id.* ¶ 12.

[10] *Id.* ¶ 13.

[11] *Id.*

[12] *Id.* ¶ 14.

[13] *Id.* ¶ 16.

the County in an action captioned *Warren et al. v. New Castle Cty.*, C.A. No. 07-725-SLR-LPS (D. Del.) (*i.e.*, the Federal Action) to compel the County to process the Application and to provide sewer service necessary to service the development contemplated by the Application. On June 26, 2008, the Magistrate Judge, now-Chief Judge Leonard P. Stark, issued a report and recommendation recommending dismissal of the Federal Action. *See Warren v. New Castle Cty.*, 2008 WL 2566947 (D. Del. 2008).

### C. The Settlement Agreement

The County, Gary Warren, Gale Warren, and Toll Brothers entered into the Settlement Agreement, dated November 29, 2010, providing for a settlement of their disputes, including the Federal Action.[14] The Settlement Agreement defines the Warrens and Toll Brothers as the "Developer."[15]

In Paragraph 1 of the Settlement Agreement, the County agreed that the properties in the Port Penn Assemblage could connect to the County sewer system in the SSSA and that the County would provide guaranteed sewer capacity to those properties.[16] The Settlement Agreement identifies, using Tax Parcel Numbers, the

---

[14] The Settlement Agreement, entitled "Settlement Agreement and Mutual Release," is attached to the Complaint as Exhibit A.

[15] *Id.* 1.

[16] Settlement Agreement ¶ 1 ("The County agrees that the Properties may connect to the County sewer system in the SSSA for a maximum of 631 housing units.").

7

properties that may connect to the County sewer system.[17] Petitioner's Property is among the properties identified in the Settlement Agreement. The County further agreed that "[t]his guaranteed sewer capacity shall be available even if the Developer or the property owners abandon the applications for the [then-pending development plans] and pursue other development options for the Properties."[18]

Under the Settlement Agreement, the County and the Developer each has obligations to construct sewer infrastructure to connect the Port Penn Assemblage to the County's sewer system. Paragraph 2 addresses the County's side of the equation and, in pertinent part, states that "[t]he County agrees to construct, at its own cost and expense, a force main line from the current central core facilities in the SSSA," at a location "just east of the existing SSSA central core boundary."[19] The Settlement Agreement defines the sewer line referenced in Paragraph 2 as the "County Force Main."[20] Under the Settlement Agreement, the Developer or the property owners may provide notice of commencement of physical construction of sewer service infrastructure to connect to the County Force Main (defined in Paragraph 3 of the Settlement Agreement as "Developer's Infrastructure

---

[17] *Id.* at 1.

[18] *Id.* ¶ 1.

[19] *Id.* ¶ 2.

[20] *Id.*

8

Improvements") to trigger the County's obligation to begin construction of the County Force Main.[21] The County's obligation to provide sewer capacity and to build the County Force Main expires on July 1, 2021 "unless Developer has connected two or more owner/renter occupied housing units to the County's Force Main by such date."[22]

Paragraph 3 addresses the Developer's obligation to construct infrastructure improvements to connect to the County Force Main. Under Paragraph 3, the Developer is responsible for constructing Developer's Infrastructure Improvements from the Properties to the County Force Main at its own cost and expense, and is to do so "in accordance with all applicable laws, regulations, standards, and policies."[23] Paragraph 3 further obligates the Developer to apply for and receive approval for "all sewer infrastructure construction" from all applicable governmental

---

[21] *Id.* ¶ 4 ("The County agrees to commence construction of the County Force Main under Route 1 and Route 13 . . . within sixty (60) days of receiving written notice from Developer or the property owners of commencement of physical construction of Developer's Infrastructure Improvements.").

[22] *Id.* ¶ 5.

[23] *Id.* ¶ 3 ("For connection to the County Force Main described in paragraph 2 above, Developer, at its own cost and expense, shall be responsible for running all necessary sewer service infrastructure from the Properties to connect to the County Force Main, in accordance with all applicable laws, regulations, standards, and policies ("Developer's Infrastructure Improvements"). Developer shall be responsible for all infrastructure costs for Developer's Infrastructure Improvements, including, but not limited to, all costs and expenses associated with design, construction, engineering, and right of way acquisition.").

authorities.[24]  The Settlement Agreement also provides Toll Brothers an extension of time to complete its Application to develop the Port Penn Assemblage, but it does not limit the Developer or the property owners "from pursuing other development options and/or different development plans for the Properties."[25]

The parties to the Settlement Agreement agreed that the Settlement Agreement would be "binding upon and inure to the benefit of the Parties and their respective owners, investors, members, directors, officers, employees, heirs, executors, successors, and assigns."[26]  The parties further agreed that the "Agreement shall run with the Properties."[27]

According to Petitioner, in October 2016, Respondent Surles, the County's General Manager of Public Works, provided the Settlement Agreement to an attorney for one of the Port Penn Assemblage property owners and told the attorney

---

[24] *Id.* ("The County shall assist, if necessary, with the acquisition of required easements (at the expense of the Developer) for the sewer lines to be owned by the County running from the Properties to the connection point.  Developer shall be required to apply for and receive approval for all sewer infrastructure construction for Developer's Infrastructure Improvements from applicable governmental approvals bodies, including, but not limited to, the County's Department of Special Services.  Developer shall also be required to pay all applicable fees associated with the connection, including plan review fees and capital recovery fees.  One half of the applicable capital recovery fee shall be due upon the application for each building permit, and the remainder of the capital recovery fee shall be required to be paid upon application for a certificate of occupancy.").

[25] *Id.* ¶ 6.

[26] *Id.* ¶ 16.

[27] *Id.* ¶ 13.

10

"that the Settlement Agreement was intended to benefit *all* of the Properties, not just the named individual parties to the Settlement Agreement."[28]

### D. The County Has Not Committed to Constructing the County Force Main.

The Complaint alleges that Petitioner approached the County, including Respondent Meyer, in an attempt to "confirm the County's commitment to the public sewer rights provided for in the Settlement Agreement."[29] Other Port Penn Assemblage property owners have also approached the County to confirm that the County would "honor its obligation under the Settlement Agreement."[30] According to the Complaint, Respondents did not provide the requested confirmation to Petitioner or the other members of the Port Penn Assemblage.[31] To the contrary, Respondents have "indicated to prospective developers and purchasers of the property that the County is not obligated to perform its obligation to provide water and sewer service under the Settlement Agreement."[32]

Petitioner alleges that the County has treated it and other Port Penn Assemblage property owners unfairly in three respects. First, Meyer and certain

---

[28] Compl. ¶ 24.

[29] *Id.* ¶ 32.

[30] *Id.* ¶ 28.

[31] *Id.* ¶¶ 28-33.

[32] *Id.* ¶ 29.

other former public officials have met with real estate developer Louis J. Capano to develop and provide public sewer service to Carter Farm, a property outside of the Port Penn Assemblage.[33] Second, the County has enacted an ordinance preventing the installation of on-site septic systems in suburban subdivisions of the County until August 2021, and selected that date because the County's obligations under the Settlement Agreement to construct the County Force Main expire in July 2021.[34] Third, the County settled a different lawsuit filed by another Port Penn Assemblage property owner against Respondents, captioned *Good v. Meyer*, C.A. No. 2018-0152-PAF.[35]

Petitioner principally seeks an order compelling Respondents "to affirm, confirm, honor, and perform the County's obligations under the Settlement Agreement to (a) build the County Force Main . . . and (b) provide sanitary sewer service to the Petitioner's Property."[36] Petitioner also seeks an order requiring Respondents to "process, evaluate, and review any development application for the Property submitted to the County as if the Property will have County sewer and water service once it is developed."[37]

---

[33] *Id.* ¶ 34.

[34] *Id.* ¶ 36.

[35] *Id.* ¶ 37.

[36] *See id.* ¶ 57.

[37] *Id.*

The Complaint contains eleven counts, listed here for ease of reference:

| Count Number | Count Title | Compl. ¶ |
|---|---|---|
| I | Breach of Contract | 38-43 |
| II | Declaratory Judgment | 44-50 |
| III | Permanent Injunctive Relief | 51-59 |
| IV | Specific Performance | 60-64 |
| V | Equal Protection Violation Pursuant to the 14th Amendment of the U.S. Constitution | 65-71 |
| VI | Modification of Settlement Agreement | 72-76 |
| VII | Bad Faith | 77-81 |
| VIII | Equitable Enforcement of Covenant | 82-86 |
| IX | Breach of Implied Covenant of Good Faith and Fair Dealing | 87-90 |
| X | Anticipatory Breach of Contract | 91-95 |
| XI | Preliminary Injunctive Relief | 96-106 |

Petitioner filed its original complaint on June 6, 2019, and filed the operative amended complaint on January 30, 2020. The parties completed briefing on the Respondents' motion to dismiss on May 22, 2020, and the Court held oral argument on June 3, 2020.

## II.    ANALYSIS

### A.    Legal Standard for Motion to Dismiss for Lack of Ripeness

Respondents have moved to dismiss, arguing the Complaint is not ripe and fails to state a claim. The parties dispute whether Court of Chancery Rule 12(b)(1) or 12(b)(6) applies to the ripeness challenge. If Rule 12(b)(1) applies, the Court may consider facts outside the complaint. If Rule 12(b)(6) applies, the Court is generally limited to the Complaint, all documents incorporated by reference therein, and facts subject to judicial notice.[38]

This Opinion analyzes the ripeness challenge under Court of Chancery Rule 12(b)(6) for two reasons. First, the ripeness challenge involves a threshold question of contract construction and, therefore, should be resolved pursuant to Court of Chancery Rule 12(b)(6). *Appriva S'holder Litig. Co., LLC v. ev3, Inc.*, 937 A.2d 1275, 1285 (Del. 2007) (noting that "the interpretation of a contract as a prerequisite to . . . standing is . . . a determination involving the merits" warranting review

---

[38] *Compare Shellburne Civic Ass'n, Inc. v. Brandywine Sch. Dist.*, 2006 WL 2588959, at *1 (Del. Ch. Sept. 1, 2006) (evaluating a motion to dismiss under Court of Chancery Rule 12(b)(6) and noting that, "[w]hen reviewing a motion to dismiss, generally only the matters referred to in the pleadings are considered. The court may also take judicial notice of certain facts pursuant to Delaware Rule of Evidence 201."), *with Acierno v. New Castle Cty.*, 2006 WL 1668370, at *1 n.8 (Del. Ch. June 8, 2006) (holding that the Court of Chancery may consider documents external to the complaint on a motion to dismiss for lack of subject matter jurisdiction).

pursuant to Rule 12(b)(6)). Second, even under the plaintiff-friendly standard of Court of Chancery Rule 12(b)(6), the Complaint is not ripe and must be dismissed.[39]

On a motion to dismiss for failure to state a claim under Court of Chancery Rule 12(b)(6):

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and ([iv]) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible to proof.

*Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (internal citations and quotation marks omitted); *accord Central Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011). "[A] trial court is required to accept only those 'reasonable inferences that logically flow from the face of the complaint' and 'is not required to accept every strained interpretation of the allegations proposed by the plaintiff.'" *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001)). "Moreover, a claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law." *Malpiede*, 780 A.2d at 1083.

---

[39] Because this Opinion concludes that the Complaint must be dismissed because the dispute is not yet ripe, the Opinion does not address whether the Complaint otherwise states a claim, except to the extent the Court must address threshold matters of contract construction to determine whether the dispute is ripe.

15

## B.    The Complaint Is Not Ripe.

This Court may decline to exercise jurisdiction over a case if the underlying dispute is not ripe. *XI Specialty Ins. Co. v. WMI Liquidating Trust*, 93 A.3d 1208, 1217 (Del. 2014). "Generally, a dispute will be deemed ripe if litigation sooner or later appears to be unavoidable and where the material facts are static. Conversely, a dispute will be deemed not ripe where the claim is based on uncertain and contingent events that may not occur, or where future events may obviate the need for judicial intervention." *Id.* 1218-19 (internal citations and quotations omitted); *see also New Castle Cty. v. Pike Creek Recreational Servs.*, *LLC*, 2013 WL 6904387, at *7 (Del. Ch. Dec. 30, 2013) (noting that the ripeness doctrine exists "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies"), *aff'd,* 105 A.3d 990 (Del. 2014). The purpose of the ripeness doctrine is "to conserve limited judicial resources and to avoid rendering a legally binding decision that could result in premature and possibly unsound lawmaking." *XI Specialty*, 93 A.3d at 1217. The ripeness doctrine further serves to "to protect . . . agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Pike Creek*, 2013 WL 6904387, at *7.

The Complaint does not present a ripe dispute for two reasons. First, Petitioner has not exhausted its administrative remedies. Second, Petitioner's claims are too contingent and hypothetical to be justiciable.

### 1.    The Doctrine of Exhaustion of Administrative Remedies

Delaware "has adopted the doctrine of exhaustion of administrative remedies," *Levinson v. Del. Comp. Rating Bureau, Inc.*, 616 A.2d 1182, 1187 (Del. 1992), which this Opinion will refer to as the "Finality Doctrine." As the Delaware Supreme Court has explained the doctrine:

> A judicially created rule, the doctrine requires that where a remedy before an administrative agency is provided, relief must be sought by exhausting this remedy before the courts will either review any action by the agency or provide an independent remedy. The policy which sustains the doctrine is one of maintaining the proper relationship between the courts and administrative agencies. It accomplishes this by: (1) favoring a preliminary administrative sifting process, especially when matters at issue are largely within the expertise of the involved agency; (2) avoiding interference with the administrative agency by withholding judicial action until the administrative process has run its course; and (3) preventing attempts to burden the courts by a resort to them in the first instance. It applies only where a claim must be initiated before an administrative agency which has exclusive jurisdiction over the matter and is able to provide an adequate remedy.

*Id.* (internal citations omitted). Although the Finality Doctrine is "a matter for discretionary determination," that discretion is constrained by the "strong presumption favoring the requirement of exhaustion of administrative remedies." *Id.* 1190.

17

New Castle County Council has statutory jurisdiction over sewer service to the County: "New Castle County Council shall have general jurisdiction over all matters pertaining to the County . . . including the power to act upon all matters pertaining to sewers[.]"[40]  The Delaware Code further provides that the "Department of Special Services . . . [i]n cooperation with the Department of Land Use" may "manage and develop plans for public facilities and infrastructure including sanitary sewers and treatment facilities."[41]

The New Castle County Unified Development Code (the "UDC") provides "standards, procedures, and minimum requirements . . . which regulate and control the planning and subdivision of lands . . . and the general development of real estate in the unincorporated areas of New Castle County, Delaware."[42]  Thus, under the UDC, the Department of Special Services ("Special Services")[43] has authority over

---

[40] 9 *Del. C.* § 1521.

[41] *Id.* § 1341.

[42] UDC § 40.01.010.  The Court can take judicial notice of the UDC.  D.R.E. 202(d)(1)(B) ("The court may, without request by a party, take judicial notice of . . . the duly enacted ordinances and duly published regulations and determinations of governmental subdivisions or agencies of . . . this State"); *see also Prince v. Ferritto, LLC*, 2019 WL 5787988, at *2 (Del. Super. 2019) (taking judicial notice of the Kent County Code).

[43] The Department of Special Services is now known as the Department of Public Works. Because the Delaware Code and the UDC have not yet been amended to reflect the new name, for clarity and consistency, this Opinion refers to the Department of Public Works as "Special Services."

18

determining the availability of sewer capacity.[44] In that regard, "land development applications that contemplate connection to County sewer," must attach "a letter from the Department of Special Services indicating that sewer is or will be available for the proposed development."[45]

### a. Petitioner Has Not Requested Sewer Capacity.

Petitioner's claim for sewer capacity is premature. Petitioner has not requested a letter from the Department of Special Services indicating whether sewer will or will not be available for any proposed development. Hence, the administrative agency has not had an opportunity to decide on Petitioner's request to extend sewer service to the Property. Petitioner has not even initiated the administrative review process for connecting the Property to the County's public sewer system. As a result, each of the three policy rationales for the application of the doctrine of administrative remedies articulated in *Levinson* applies here, and all three warrant dismissal of the Complaint.

---

[44] UDC § 40.05.000(b) ("County sewer service may represent a limiting factor for development. The County has conducted an analysis of various areas of the County to determine the sewer capacity of each area. In all sewer service areas in the County, sewer capacity shall be provided on a first come, first serve basis if and/or when sanitary sewer service becomes available, as determined by the Department of Special Services.").

[45] UDC App'x 1 1(A)(10).

First, the "matters at issue are largely within the expertise of the . . . agency" because determinations relating to sewer capacity are within the expertise of Special Services. *Levinson*, 616 A.2d at 1187.

Second, it is desirable to "avoid[] interference with the administrative agency" here because Special Services has not made any determination regarding the availability of sewer capacity for the Property. *Id.* Petitioner argues that the County has made its position known by allegedly ignoring Petitioner's requests for meetings "to discuss and confirm the County's commitment to the public sewer rights provided for in the Settlement Agreement." Compl. ¶ 32. Special Services, however, has promulgated a written policy stating that it will only respond to requests in writing, and Petitioner has not made any written request to Special Services.[46] Further, even if Special Services eventually determines that Petitioner does not have any rights to connect to the County's public sewer infrastructure under the Settlement Agreement, that does not render the agency's involvement meaningless or excuse Petitioner from avoiding the administrative review process.

---

[46] *See* New Castle County Sewer Capacity Policy (attached as Exhibit A to Respondents' Opening Brief). Petitioner does not contest the applicability of the policy cited by Respondents. The Court may take judicial notice of the County's policies in evaluating a motion to dismiss pursuant to Court of Chancery Rule 12(b)(6). *Frank C. Sparks Co. v. Huber Baking Co.*, 96 A.2d 456, 462 (Del. 1953) (taking judicial notice of Delaware agency policy); *In re Wheelabrator Techs., Inc. S'holders Litig.*, 1992 WL 212595, at *12 (Del. Ch. Sept. 1, 1992) (noting that the Court may take judicial notice of publicly filed documents).

Third, the Finality Doctrine bars the Complaint because Petitioner is improperly attempting to "burden the courts by a resort to them in the first instance." *See Levinson*, 515 A.2d at 1187. The Complaint expressly seeks to have this Court usurp the role of Special Services in determining whether the Property is eligible for sewer service. *See* Compl. ¶ 57 (seeking an order requiring Respondents "to process, evaluate, and review any development application for the Property submitted to the County as if the Property will have County sewer and water service once it is developed"). Preventing the agency's review of any development plan is inconsistent with the Settlement Agreement and the role of the Court. Under the Settlement Agreement, the County retained discretion regarding the approval or disapproval of any development plans to provide the Property with sewer service. *See* Settlement Agreement ¶ 6 ("Developer agrees to diligently pursue all applications for the Plans, and nothing herein shall relieve Developer of its obligation to obey all Federal, State, and County laws, ordinances, regulations, and policies in seeking development approval for Plans or any future development options for the Properties."). More important, it would be inefficient to expend judicial resources to adjudicate a dispute where the Petitioner has not requested a sewer capacity determination for a development proposal upon which the County could express a formal position. If "[t]he finality requirement is not satisfied when a developer, unhappy with a mere recommendation of a first-level land use agency,

21

runs immediately to court," *Warren*, 2008 WL 2566947, at *14, then it cannot be satisfied when a party has not even taken the first step to obtain an administrative recommendation, let alone a final ruling.

### b.     Exceptions to the Finality Doctrine

Petitioner argues that three exceptions to the Finality Doctrine apply.[47]   As discussed below, the exceptions cited by Petitioner only apply to claims that would survive regardless of the administrative agency's decision.   Here, however, administrative review remains relevant to Petitioner's request for sewer capacity and sewer infrastructure.  Therefore, the exceptions to the Finality Doctrine do not apply.

"First, a party pressing a facial challenge to a zoning ordinance, on either substantive due process or equal protection grounds, need not wait for a final decision applying the zoning ordinance to the party's particular project."  *Warren*, 2008 WL 2566947, at *15.  Claims that zoning ordinances are unconstitutional on their face are not subject to dismissal on the basis of the Finality Doctrine because facial challenges claim that "'*any* application of the regulation is unconstitutional.'" *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006) (quoting *Eide v. Sarasota Cty.*, 908 F.2d 716, 724 n.14 (11th Cir. 1990)) (emphasis in original).  By contrast, "for an as-applied challenge, the landowner is only attacking

---

[47] Petitioner's Answering Br. 21-23 (citing *Warren*, 2008 WL 2566947, at *15-16).

the decision that applied the regulation to his or her property." *Cty. Concrete Corp.*, 442 F.3d at 164 (quoting *Eide*, 908 F.2d at 724 n.14).

Petitioner contends that its claims must survive because it "challenges the County's actions on equal protection grounds."[48] Petitioner's equal protection claim, however, is an as-applied challenge to the County's purported decision regarding Petitioner's request for sewer service, not a facial claim that any application of a legislative act or ordinance fails.[49] In its briefing (but not its pleading), Petitioner cites a 2003 ordinance as the subject of its equal protection claim, but Petitioner does not argue that the ordinance is facially unconstitutional. *See Cty. Concrete*, 442 F.3d at 164. Accordingly, the exception for facial equal protection challenges is not applicable here.

Second, Petitioner invokes an exception to the finality doctrine for "as-applied substantive due process claim[s] when the landowner alleges extreme 'wrongful conduct' by the governmental entity directed at the landowner." *Warren*, 2008 WL 2566947, at *16. The exception exists for substantive due process claims that do "not really challenge the land use decision but . . . [are] directed to related wrongful conduct, because the claim would survive 'even if the ultimate outcome of plaintiff's permit applications was favorable.'" *Id.* (quoting *Cty. Concrete*, 442 F.3d at 164).

_____

[48] Petitioner's Answering Br. 22.

[49] *See* Compl. ¶¶ 65-71.

Here, the Complaint does not contain an as-applied substantive due process claim. In fact, Petitioner conceded in its pleading and at oral argument that it did not have a constitutional right to sewer access.[50] *In re New Maurice J. Moyer Academy, Inc.*, 108 A.3d 294, 321 (Del. Ch. 2015) ("[T]he protections of substantive due process attach only where a plaintiff has demonstrated deprivation of an interest that is considered a 'fundamental' right under the United States Constitution."). As a result, the exception for as-applied substantive due process claims does not apply in this case.

Third, the Court may decline to dismiss an action for failure to comply with the Finality Doctrine where pursuit of the administrative remedy would be futile, "generally because the administrative body the plaintiff avoided had no power to provide the relief sought." *Warren*, 2008 WL 2566947, at *16. Petitioner does not argue that Special Services or the County lacks the power to provide sewer capacity and construct the County Force Main. Rather, Petitioner maintains that it need not pursue administrative remedies because the County has ignored its entreaties to

---

[50] *See* Compl. ¶ 70 n.11; Oral Arg. Regarding Mot. to Dismiss 30 (COUNSEL FOR PETITIONER: "We're not alleging there's a constitutional right to sewer.") (Dkt. 34) ("Oral Arg. Tr."). The provision of sewer service is not a right protected by substantive due process protections under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Port Penn Hunting Lodge Ass'n v. Meyer*, 2019 WL 2077600 at *3-4 (Del. Ch. May 9, 2019) (holding that sewer service is not an established fundamental right protected by substantive due process), *aff'd*, 222 A.3d 1044 (Del. 2019).

confirm its purported rights under the Settlement Agreement. Petitioner's reliance on informal entreaties do not allow it to ignore administrative remedies. Petitioner has not adequately pleaded—and the record does not support—that obtaining administrative review of its proposal would be futile.[51] Rather, Petitioner has only pleaded facts indicating that, in its view, the County is likely to deny its request for sewer capacity.[52] That is not sufficient to excuse Petitioner's failure to seek administrative remedies prior to litigation. *See Levinson*, 616 A.2d at 1190-91 (holding that an agency's discretion to deny a proposal does not render obtaining

---

[51] In their Reply Brief, Respondents state: "The County has confirmed and reaffirms that if the contractual contingencies are satisfied by the Developer . . . the County will honor its commitments." Respondents' Reply Br. 6.

[52] Petitioner alleges that Respondents have anticipatorily repudiated any obligations owed to Petitioner under the Settlement Agreement because the County has not responded to the Petitioner's requests. Compl. ¶¶ 28-31. These allegations do not adequately allege that Respondents have repudiated the Settlement Agreement, especially in light of Special Services's policy requiring written requests. Ignoring Petitioners' requests to confirm its obligations under the Settlement Agreement does not constitute a statement that the County "outright refus[es] . . . to perform [the Settlement Agreement]." *HIFN, Inc. v. Intel Corp.*, 2007 WL 1309376, at *14 (Del. Ch. May 2, 2007). Petitioner also alleges that the County has "indicated to prospective developers and purchasers of the property that the County is not obligated to perform its obligation to provide water and sewer service under the Settlement Agreement." Compl. ¶ 19. Again, this allegation is too vague to sustain a claim for anticipatory repudiation and, in any event, the County's statements to third parties could not constitute an anticipatory repudiation. Restatement (Second) of Contracts § 250 cmt. c (1981) (noting that the statement giving rise to a repudiation "must be made to an obligee under the contract, including a third party beneficiary or an assignee"); *see also id.* at illustration 4 ("A tells C, a third person having no right under the contract, and not B, that he will not perform. C informs B of this conversation, although not requested by A to do so. A's statement is not a repudiation.").

administrative review "futile," including where an agency had already preliminarily disapproved an application).

Because none of the exceptions to the Finality Doctrine apply, in the exercise of the Court's discretion, dismissal for failure to exhaust administrative remedies is appropriate.

### C. Petitioner's Claims Are Contingent and Hypothetical.

The Complaint does not present a ripe dispute because Petitioner's claims are too contingent and hypothetical to be justiciable. First, Petitioner seeks an order requiring the County to construct the County Force Main. The County's obligation to construct the County Force Main, however, is contingent upon the County's receipt of notice that construction of sewer infrastructure has begun. There is no allegation that the Developer (or any other developer) seeks to build the infrastructure to connect the Property to the County Force Main. Second, Petitioner seeks a general order requiring the County to affirm and comply with its obligations under the Settlement Agreement to provide sewer service and capacity to the Property *if* Petitioner or another developer seeks to connect the Property to the County Force Main. This is a request for an impermissible advisory opinion. "Delaware courts do not render advisory or hypothetical opinions." *XI Specialty*, 93 A.3d at 1217.

### 1. The County's Obligation to Construct the County Force Main Is Contingent.

In Counts III, IV, X, and XI, Petitioner seeks an order requiring the County to construct the County Force Main.[53] Petitioner ignores, however, that the Settlement Agreement does not impose upon the County an unconditional obligation to construct the County Force Main. Rather, the Developer (*i.e.*, the Warrens and Toll Brothers) or the property owners listed in the Settlement Agreement must provide notice to the County that construction of Developer's Infrastructure Improvements has begun in order to trigger County's obligation to begin construction of the County Force Main. Paragraph 4 of the Settlement Agreement states that the "County agrees to commence construction of the County Force Main . . . within sixty (60) days of receiving written notice from Developer or the property owners of commencement of physical construction of Developer's Infrastructure Improvements."[54] The same paragraph states that "[t]he County may, but shall not be required to, begin

---

[53] Count III (Permanent Injunctive Relief) alleges that "Respondents have repeatedly refused to affirm or confirm the County's obligations under the Settlement Agreement to (a) build the County Force Main (as defined by the Settlement Agreement) and (b) provide sanitary sewer service to the Petitioner's Property, despite the plain language of the Settlement Agreement." Compl. ¶ 53. Counts IV and XI allege the same obligations. *Id.* ¶¶ 63, 100; *see also* Compl. 32 (seeking injunctive relief compelling Respondents to "affirm, confirm, honor, and perform the County's obligations under the Settlement Agreement to (a) build the County Force Main (as defined by the Settlement Agreement) and (b) provide sanitary sewer service to the Petitioner's Property)").

[54] Settlement Agreement ¶ 4.

construction of the County Force Main . . . at an earlier time."[55]  It is undisputed that construction on Developer's Infrastructure Improvements has not yet begun.  The Complaint also contains no well-pleaded allegation that Developer's Infrastructure Improvements will be constructed (by either the Developer or by any other developer), and that the County has repudiated its obligation to begin construction of the County Force Main.

Thus, under the terms of the Settlement Agreement, the County owes no present obligation to begin construction of the County Force Main, and any obligation to do so remains contingent.  Accordingly, the question of whether Petitioner is entitled to an order compelling the County to begin construction of the County Force Main does not present a ripe dispute.  *XI Specialty*, 93 A.3d at 1218-19 (holding that a dispute is "not ripe where the claim is based on uncertain and contingent events that may not occur, or where future events may obviate the need for judicial intervention") (internal citations omitted); *see also Energy P'rs Ltd. v. Stone Energy Corp.*, 2006 WL 2947483, at \*7 (Del. Ch. Oct. 11, 2006) ("[I]f a plaintiff's action is 'contingent,' that is, if the action requires the occurrence of some future event before the action's factual predicate is complete, the controversy is not ripe.") (internal quotations omitted).

---

[55] *Id.*

## 2. Petitioner Seeks an Impermissible Advisory Opinion.

Counts III, IV, and XI seek to compel the County to guarantee and provide sewer capacity for the Property in the event that Petitioner or another developer seeks to build infrastructure improvements to connect the Property to the County Force Main.[56] The remaining counts of the Complaint—Counts I, II, V, VI, VII, VIII, X, and IX—also seek a determination of the parties' respective rights and obligations under the Settlement Agreement if someone other than the Developer seeks to connect the Property to the County Force Main.

The foundation of the Complaint is not grounded in any specific breach of the Settlement Agreement. Instead, Petitioner builds its Complaint on the theory that the County has acted wrongfully by failing to confirm its purported legal obligations under the Settlement Agreement. For example, Count I (Breach of Contract) claims that Respondents have "intentionally delay[ed] any resolution of the inquiries of Petitioner . . . as to the parties' respective obligations under the Settlement Agreement."[57] Count VII (Bad Faith) argues that Respondents have acted in bad faith because they "refused to confirm whether they believe the County is obligated to abide by its terms."[58] Petitioner further alleges in Count VII that this is an

---

[56] *See* Compl. ¶¶ 53, 63, 92, 100.

[57] *Id.* ¶ 42.

[58] *Id.* ¶ 79.

"obvious effort to leave the Petitioner with no remedy due to the Petitioner's inability to meet the precedent condition necessary to obligate the County to provide water and sewer service to the Property."[59] Through Count X (Anticipatory Breach of Contract), Petitioner seeks "the County's assurance that it will comply with its obligations" if Petitioner or another developer "satisfies the construction requirements set forth in the Settlement Agreement."[60] Similarly, Counts II, V, VI, VIII, and IX advance alternative theories for relief on the grounds that the County purportedly owes obligations to Petitioner under the Settlement Agreement.[61] Petitioner argues that without an order requiring the County to confirm its alleged

---

[59] *Id.* ¶ 79.

[60] Petitioner's Answering Br. 28.

[61] Count II (Declaratory Judgment) generally seeks a declaration that the County owes obligations under the Settlement Agreement. Compl. ¶ 50. Count V (Equal Protection) alleges that the County has treated Petitioner differently from other property owners in the Port Penn Assemblage "by acknowledging the rights of other beneficiaries to sewer service or entering into negotiations to compensate those beneficiaries for the same rights to the exclusion of the Petitioner." *Id.* ¶ 66. Count VI (Modification of Settlement Agreement) seeks a modification of the Settlement Agreement arising from the County's failure to provide assurances. *Id.* ¶ 74. Count VIII (Equitable Enforcement of Covenant) argues that Petitioner has standing to enforce the Settlement Agreement against the County because "Toll Brothers abandoned its Application to develop the Property and failed to perform its contractual obligations to Petitioner." *See id.* ¶¶ 83, 85. Count IX (Breach of the Implied Covenant of Good Faith and Fair Dealing) alleges that the County has breached the implied covenant of good faith and fair dealing, although the Complaint does not specify what the implied terms are or how they arise from the contract. *Id.* ¶ 89.

obligations under the Settlement Agreement, Petitioner has been "delayed in securing a buyer or developer willing to develop the Property."[62]

These claims seek a determination of Petitioner's rights under the assumption that the Petitioner, a future owner of the Property, or a developer other than the Developer eventually seeks to connect the Property to the County public sewer. These claims also assume that the County will disapprove every development plan to do so. These claims are "an invitation for a court to render an advisory opinion based on a hypothetical case." *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 481 (Del. 1989). "Delaware courts do not render advisory or hypothetical opinions." *XI Specialty*, 93 A.3d at 1217; *see Aviva Life and Annuity Co. v. Am. Gen. Life Ins. Co.*, 2014 WL 1677798, at *13 (Del. Ch. Apr. 29, 2014) (declining to opine on plaintiff's claims based on its own contingencies, "which may never come to pass," because "the opinion sought would be advisory").[63] Here, considering all of the possibilities that would render Court intervention unnecessary or uncertain "underscore[s] that

---

[62] *Id.* ¶ 55.

[63] Petitioner's claim for declaratory judgment regarding its rights under the Purchase Agreement in Count II is not exempt from the ripeness requirement. *Stroud*, 552 A.2d at 479 (declaratory judgment cannot serve "'as a means of eliciting advisory opinions from the courts.'") (quoting *Ackerman v. Stemerman*, 201 A.2d 173, 175 (Del. 1964)); *see also Aviva Life and Annuity Co.,* 2014 WL 1677798, at *10 (Del. Ch. Apr. 29, 2014) (declaratory relief cannot be provided to resolve "hypothetical disputes or . . . situations in which a judicial declaration will not end the dispute between the parties") (quoting *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 623 A.2d 1133, 1137 (Del. Super. 1992)).

any judicial determination at this stage would necessarily amount to an impermissible advisory opinion." *XI Specialty*, 93 A.3d at 1219.

First, it remains possible for the County to approve a development plan connecting the Property to the County sewer. As noted above, Petitioner has not adequately alleged that seeking administrative approval would be futile. It remains possible that Special Services and the County could approve a plan to develop the Property and to connect the Property to the County's public sewer. That possibility would render the Court's intervention unnecessary. *XI Specialty*, 93 A.3d at 1217 (holding that a dispute is not ripe where "future events may obviate the need for judicial intervention") (internal quotations omitted). Even assuming that the County owes contractual duties to Petitioner as a third-party beneficiary, the County's ultimate reasons for disapproving a plan to connect the Property to the County's public sewer could implicate different sections of the Settlement Agreement.[64] Because Petitioner has neither presented a plan nor begun to seek administrative approval, however, the nature and scope of any eventual dispute remains unclear.

---

[64] In their briefing, the parties dispute whether Petitioner is a third-party beneficiary with rights under the Settlement Agreement or whether Petitioner is a mere incidental beneficiary. Because the Court dismisses the Complaint for failure to present a ripe dispute, this Opinion does not address the issue of whether Petitioner is a third-party beneficiary.

32

Second, it is possible that neither Petitioner nor any developer ultimately seeks to develop the Property and connect the Property to the County's public sewer. As Petitioner acknowledged at oral argument, the Petitioner is not currently seeking to develop the Property.[65] There is also no indication from the record that any developer is willing to undertake development of the Property. In the event that no developer seeks to connect the Property to the County's public sewer, the County's purported obligations owed to Petitioner remain inchoate, and there will be no need for the Court to issue an opinion. *XI Specialty*, 93 A.3d at 1217.

Third, the dispute is not ripe because the Court cannot assume that the Developer will not construct Developer's Infrastructure Improvements. The Complaint does not allege that the Developer or its assignee[66] could not initiate construction of Developer's Infrastructure Improvements. The Complaint also does not allege that the Developer has waived or forfeited its rights under the Settlement

---

[65] *See* Oral Arg. Tr. 38 ("THE COURT: [I]s it correct that your client is not pursuing any development options for the properties? COUNSEL FOR PETITIONER: Yes.").

[66] *See* Oral Arg. Tr. 7 (Counsel for Respondents acknowledging that Toll Brothers' rights under the Settlement Agreement could be assigned); Settlement Agreement ¶ 16 ("This Agreement shall be binding upon and inure to the benefit of the Parties and their respective . . . assigns.").

Agreement.[67] In the event the Developer seeks to construct Developer's Infrastructure Improvements, there would potentially be no need for an order determining whether Petitioner or another developer could construct Developer's Infrastructure Improvements and obligate the County to construct the County Force Main and to provide sewer capacity. *XI Specialty*, 93 A.3d at 1217.[68]

In sum, the Complaint is not ripe because Petitioner's claims require the Court to assume a hypothetical situation subject to numerous contingencies that would significantly affect the dispute before the Court, or moot the dispute altogether. Adjudicating this dispute would thus require the Court to issue an impermissible

---

[67] The only allegation in the Complaint regarding Toll Brothers' decision not to pursue development pursuant to the Settlement Agreement in the Complaint is a conclusory allegation. Compl. ¶ 83 ("When Toll Brothers abandoned its Application to develop the Property and failed to perform its contractual obligations to Petitioner including those under the Settlement Agreement, it effectively reconveyed the Property, of which it had been equitable owner, back to Petitioner."). This allegation is not sufficient to demonstrate that Toll Brothers and the Warrens no longer have any right to construct Developer's Infrastructure Improvements pursuant to the Settlement Agreement. The Answering Brief states that "[t]he Developer as defined by the Settlement Agreement is no longer involved with the Property or any of the Port Penn Assemblage properties." Petitioner's Answering Br. 12; *see also id.* 41 ("As the Developer is no longer involved in the development of the Property, the Developer is not going to complete the conditions."). This argument also does not demonstrate that Toll Brothers and the Warrens waived or forfeited their rights under the Settlement Agreement.

[68] If this litigation continued on the theory that Petitioner or developers other than the Developer could construct Developer's Infrastructure Improvements to benefit Petitioner in lieu of the Developer, it is possible that this action could affect the rights of the Warrens and Toll Brothers under the Settlement Agreement. Because this Opinion dismisses the Complaint, this Opinion does not reach the question of whether Toll Brothers and the Warrens are indispensable parties to this litigation. *See* Ct. Ch. R. 19(a)(2).

34

advisory opinion regarding Petitioner's potential rights over a dispute that is not yet ripe.

## III.    CONCLUSION

For the foregoing reasons, the Respondents' Motion to Dismiss the Complaint is granted.

**IT IS SO ORDERED.**