# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| SU-BE, LLC, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | |
| v. | ) | |
| | ) | C.A. No. N22A-12-004 CEB |
| NEW CASTLE COUNTY | ) | |
| DEPARTMENT OF LAND USE and | ) | |
| NEW CASTLE COUNTY BOARD | ) | |
| OF LICENSE, INSPECTION, AND | ) | |
| REVIEW, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

Submitted: May 3, 2024
Decided: July 3, 2024

## ORDER

*Upon Consideration of the Appeal of the Rulings of the
New Castle County Board of License, Inspection, and Review,*
**AFFIRMED.**

William E. Green, Jr., Esquire, and Theodore A. Kittila, Esquire, HALLORAN, FARKAS + KITTILA, LLP, Wilmington, Delaware. *Attorneys for Plaintiff/Appellant SU-BE, LLC.*

Adam Singer, Esquire, NEW CASTLE COUNTY LAW DEPARTMENT, New Castle, Delaware. *Attorney for Defendant/Appellees New Castle County Department of Land Use.*

Mary A. Jacobson, Esquire, NEW CASTLE COUNTY LAW DEPARTMENT, New Castle, Delaware. *Attorney for Defendant/Appellees New Castle County Board of License, Inspection, and Review.*

**BUTLER, R.J.**

**BACKGROUND**

This is the Court's second trip through the saga of SU-BE, LLC ("Appellant") and its property located at 1010 Bohemia Mill Road in Middletown. In its last iteration, the dispute concerned the "farmland exemption" of the state and county codes and whether the entire 16-acre tract was exempt or whether a 5-acre portion was excluded from the exemption because it was being used as a construction equipment storage site. That dispute resulted in a Superior Court ruling that the 5-acre portion of the larger tract was not appropriately designated as exempt farmland.[1]

At about the same time the County was investing the farmland exemption issue, it inspected the construction equipment portion of the property and cited SU-BE for both zoning code and Property Maintenance Code ("PMC") violations.

These various code violations were adjudicated in a consolidated hearing before a Hearing Officer at a Rule to Show Cause ("RTSC") Hearing in July 2022. After hearing the evidence, the RTSC Hearing Officer upheld the County's violation citations in all respects and ordered remedial action.[2]

As noted, some of these violations are county zoning code violations and some are county PMC violations. One of the issues presented in this appeal involves the

---

[1] *SU-BE, LLC v. New Castle County Dept. of Land Use*, 2024 WL 3070003 (Del. Super. June 20, 2024).

[2] R00017-22. A certified record of the administrative proceeding may be found in the Court's record at Docket No. 11. The record is stamped as "R00XXX."

proper forum for administratively appealing these various issues, but for now suffice it to say that Appellant appealed everything to the Licensing & Inspection Review Board ("LIRB"), concededly the proper forum for appeals of PMC violations.

The LIRB rejected Appellant's claims, much as the RTSC Hearing Officer did, in a detailed written opinion.[3] Appellant appealed to this Court, asserting that the appropriate means of appellate review is by way of writ of certiorari. Typifying the pitched battle fought by the parties to that point, the County moved to dismiss the writ, arguing that Appellant could not seek certiorari in these circumstances. Briefing was incomplete on that issue when attorney Richard Abbott withdrew as counsel for Appellant and there followed a delay until new counsel appeared. New counsel for Appellant was given the opportunity to adopt, rescind or modify the briefing in place and new counsel chose to start over. The certiorari question appears to have disappeared in the second round of briefing, and the parties have now distilled their arguments into clearly articulated positions.

---

[3] R00028-52.

**STANDARD OF REVIEW**

The Court is mindful that its scope of review here is quite limited. Indeed, one of the reasons for the controversy over the propriety of certiorari review earlier in the pleadings concerned the fact that certiorari does not permit the Court to engage in a searching review of the record – a review Appellant felt it needed – to obtain relief. Perhaps aware of the limited scope of review, each of Appellant's arguments is couched in terms of "legal error." The County points out that the Supreme Court has said that the lower tribunal must be affirmed unless it "proceeded illegally or manifestly contrary to law"[4] although the County concedes that whether a given action is only contrary to law or "manifestly" contrary to law is not well defined.[5]

**ANALYSIS**

### I. The LIRB Correctly Determined it did not have Jurisdiction to Hear the Zoning Code Violations.

Appellant's first argument concerns the jurisdiction of the LIRB. Recall that all of Appellant's citations – zoning code and PMC violations – were adjudicated in a single hearing by a Hearing Officer at the RTSC hearing. Rather than appealing the zoning code violations to the County Zoning Board of Adjustment and the PMC code violations to the LIRB, Appellant appealed both sets of citations to the LIRB.

---

[4] *Christiana Town Center, LLC, v. New Castle County*, 865 A.2d 521, 2004 WL 2921830, at *2 (Del. Dec. 16, 2004) (TABLE) (*citing* Wooley, Delaware Practice, Vol. 1, § 921)).
[5] Def.'s Answering Br. at 10-11, Trans. ID 72769130 (Apr. 17, 2024).

The County protested that the LIRB does not have jurisdiction to hear appeals of the zoning code citations. The LIRB heard argument and concluded it did not have jurisdiction over zoning citations.

Appellant's argument here primarily concerns what it believes is a tension between state and county law. It correctly notes that state law generally prevails over county or municipal law when the two are in conflict.[6]

Appellant's primary reliance is on 9 *Del. C.* §1315. Title 9 of the Delaware Code concerns County governments. While the first "Part" of Title 9 deals with issues common to all three counties, Parts II, III and IV deal with New Castle, Kent and Sussex County respectively. Within Part II, there are chapters concerning everything from the structure of county government to garbage disposal. More relevant here, there are separate chapters dealing with zoning,[7] building code,[8] and property maintenance.[9]

Section 1315 is embedded within the 5 subchapters on New Castle County Departments[10] and specifically the Department of Land Use. Various Boards are authorized within the Department of Land Use: a Board of Building Standards, a

---

[6] *See generally State ex rel. Jennings v. City of Seaford*, 278 A.3d 1149, 1153 (Del. Ch. 2022); *Walton v. Baldini, Inc.*, 1991 WL 35712, at *2 (Del. Super. Feb. 13, 1991).
[7] 9 *Del. C.* §§ 2601-2699.
[8] *Id.* §§ 2501-2515.
[9] *Id.* §§ 2901-2910.
[10] *Id.* §§ 1301-1397.

Board of Assessment Review, a Board of License and Inspection Review, and a Board of Adjustment.

It is probably important to note at this point that like many of the code provisions in Title 9, the code "authorizes" counties to create an administrative board and the County "may" do so. Thus, we might think of these code provisions as enabling legislation for the counties who, should they choose to enact the authorized board or agency, may do so, subject to any proscriptions of the enabling legislation. So, while much is explicit, the Delaware Code is not an exhaustive catalog of the procedures to be followed in specific cases.

Section 1315 authorizes the County to have a Board of License and Inspection Review. That authorization says that such a Board "may be authorized" to provide an appeal procedure for review of "the issuance, transfer, renewal, refusal, suspension, revocation or cancellation of any County license, or by any notice, order or other action as a result of any County inspection."[11]

As to zoning disputes, 9 *Del. C.* §1313 authorizes a County Board of Adjustment, which "shall be empowered to hear and decide . . . [a]ppeals in zoning matters" where the allegation is that there was an error by "an administrative officer or agency in the enforcement of any zoning ordinance, code, regulation or map."[12]

---

[11] *Id.* § 1315.
[12] *Id.* § 1313(a)(1).

The County insists that the zoning code citations should be heard by the Board of Adjustment and not the LIRB.

One supposes the LIRB could be the situs for zoning disputes, since the state enabling legislation authorizes it to review "other action as a result of a County inspection"[13] and presumably, many zoning citations arise from county inspections. Likewise, the Board of Adjustment might be the situs for farmland assessments, since that designation arises from the taxing administrator's "code, regulation or map."[14]

But the LIRB's enabling legislation refers to disputes over a county license. The "other action" it is empowered to resolve is "other action" concerning a county license. The Board of Adjustment is authorized to hear "zoning matters" that may arise from any number of sources, including codes, regulations, or maps. The enabling legislation says nothing about licenses.

The "well established principle of *ejusdem generis* instructs that, 'where general language follows an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their

---

[13] *Id.* § 1315.
[14] *Id.* § 1313(a)(1).

6

widest extent, but are to be held as applying only to the persons or things of the same general kind or class as those specifically enumerated.'"[15]

The Court has little difficulty concluding that the LIRB was not clearly in error in ruling that it did not have jurisdiction over the zoning citations appeals. Not only were these appeals outside its statutory enabling legislation, but zoning was also a subject matter the LIRB freely acknowledged was outside its area of expertise.[16]

If Appellant's argument to the contrary seems strained, it may be because Appellant's most cogent complaint is that the bifurcation of the appeals in this matter forced Appellant to appeal to two different boards, a path Appellant feels was unfair. Appellant argued before the LIRB that having two different boards hear the appeal of violation notices concerning the same property "could lead to a nonsensical result and invite chaos."[17] But whether the County chooses to consolidate appeals in one board or another for the sake of consistency, brevity, or fairness, the Court is not in a position to rule in favor of one policy over another. These are matters that take this dispute well out of the realm of legal analysis and into the space reserved for policy choices exercised by county government. Even if the statutory language

---

[15] *Delaware Bd. of Nursing v. Gillespie*, 41 A.3d 423, 427-28 (Del. 2012) (*quoting Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1265 (Del. 2004)).
[16] R00038.
[17] R00036.

*could* be read to allow jurisdiction, that does not mean that it *must* be exercised when there is another board more attuned to the issues. It is enough to resolve the issue before the Court to say that the LIRB's conclusion that it lacked jurisdiction over the zoning appeals was not clearly erroneous.

## II. The Construction Equipment Area was not Farmland. The County is Permitted to regulate it under Relevant Delaware Law.

Appellant next argues that at the time the citations against the property were issued, the entire 16-acre parcel was "farmland exempt" and the County has no legal authority to regulate, much less issue a citation, to farmland exempt property. This is a virtual rehash of arguments previously made, and rejected, in *New Castle County v. Augusiewicz,*[18] a case involving essentially the same parties, and the same land, in 2008.

*Augusiewicz* was apparently the County's first attempt to regulate the construction area in question here. After an inspection on November 1, 2006, the County wrote to the owner's attorney and demanded the property be brought into compliance with the County code within 30 days. When it was not, the County cited the landowner with 19 county code violations. A trial was pending in the J.P. Court when Augusiewicz appeared and argued that the County could not enforce the citations because the land in question was farmland and exempt from regulation by

---

[18] 2008 WL 2751305 (Del. Com. Pl. July 11, 2008), *appeal dismissed,* 2009 WL 2852554 (Del. Super. Aug. 31, 2009).

the County. This argument was correct at the time because the entire property was still designated farmland exempt even though part of it was dedicated to a different use. The J.P. Court agreed and dismissed the citations.

On the County's appeal to the Court of Common Pleas, the Court of Common Pleas reversed the J.P. Court's dismissal. The Court of Common Pleas accepted the County's argument that when part of a farmland exempt property is not being used for farming, it is subject to regulation like all other property. Note, however, that the County had never sought reassessment of the farm exemption via tax assessment or any other means. Rather, the County's position was that the court should make that assessment in the first instance. The court said:

> [W]ithout a factual inquiry, it is impossible to determine whether Appellee's use of the Property was non-agricultural in nature. *Once land is assessed as farmland, the better procedure would be for the County to reassess before seeking to regulate.* However, it is unclear whether this is required, because such would permit unauthorized use without consequence. As such, the County must be allowed to put forth facts which show the land is subject to regulation.[19]

Clearly, the County took the court's words to heart. This time around, the County first assessed the non-farm related portion of the land and announced its intention to tax it before citing its allegedly improper uses. The factual question of

---

[19] *Id.* at *4. (emphasis added).

9

whether the 5 acres is farmland exempt was finally determined by the Hearing Officer at the RTSC hearing and affirmed by the LIRB.

The only argument here is that the citations came *before* the farm exemption had been lost as to the 5 acres being used for construction storage. The argument goes that since the land was still exempt when it was cited, it was an attempt to regulate exempt farmland and therefore illegal under the Delaware Constitution and 9 *Del. C.* §2601(b)(1) (prohibiting county regulation of farm exempt property).

Ignoring for a moment the long history of Appellant's use of the 5-acre parcel for non-farm uses, the citations in question here were issued on March 21, 2022, and cited 5 code violations.[20]  On May 24, 2022, the County Division of Assessment formally announced that is was removing 5.45 acres from the farmland exemption.[21] On June 30, 2023, the County cited the property again for the 5 code violations identified in the March Violation Notice, plus 2 more.[22]  Because the County's "tax year" begins on July 1, the first date on which the 5 acres was taxed  was July 1. There followed a Rule to Show Cause Hearing, and disputations before the LIRB.

So, was this an attempt to regulate/cite land that was "farmland exempt?" When did it lose its farmland exemption?  The statutes are unclear, and according to

---

[20] R00001-02.
[21] Pl.'s Opening Br., App. at A-123.
[22] R00005-07.

the *Augusiewicz* opinion, a fact finding, and "official" pronouncement is not necessary, but desirable.

The LIRB discussed this issue in some detail, concluding that the relevant date was May 24, 2022 when the tax assessor announced the decision of the Division of Assessment.[23] That decision was not clearly erroneous. Because the 5.45 acres was no longer farmland exempt as of May 24, 2022, the County could regulate it and could cite its owner in June, 2022 for violating the County property maintenance and zoning codes.

## III. The Citations Were Not Time-Barred.

Next, Appellant points to the 2008 litigation as evidence that the County has known for many years that the 5 acres in question has been used as a construction equipment storage site. Appellant then says the 3-year statute of limitations and/or the equitable doctrine of laches bars the County's actions against it. The Court is unconvinced.

If Appellant brought the property into compliance with all applicable zoning and use requirements of the County Code, and then over 3 years later the County cited it, Appellant could invoke the statute of limitations. Statutes of limitation are intended to "prevent[] surprises through the revival of claims that have been allowed

---

[23] R00060-73.

11

to slumber until evidence has been lost[,] memories faded and witnesses disappeared."[24] But when the property remains out of compliance, the statute of limitations cannot begin, because the "wrong" continues until it stops.

The illogic of a statute of limitations to enforcement of zoning violations is particularly stark. Appellant argues for a rule that would allow violations of the zoning laws to persist forever, so long as the owner got away with the zoning violation for 3 years. There may well be areas of land use in which application of a statute of limitations makes sense. Applying one to the government's ability to enforce the zoning laws to a landowner whose violation of the zoning code is ongoing is not one of them.

The Appellant was cited for having an oversized vehicle on the property in June 2022. It does not matter how long it had been sitting there, it matters only that it was there in June 2022. Appellant was also cited for construction equipment parked in an area zoned residential in June 2022. Again, when or how it got there is irrelevant to a statute of limitations analysis.

Appellant argues that even if the statute of limitations does not bar these citations, the equitable doctrine of laches does.[25]

---

[24] *Dow Chemical Corp. v. Blanco,* 67 A.3d 392, 395 (Del. 2013) (*quoting Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554 (1974)).
[25] Both sides debate whether the County is guilty of laches, but neither discuss whether Superior Court has jurisdiction over the equitable defense of laches at all. Appellant cites the case of *Pike*

Appellant's argument presumes that the County was aware, in 2008, that Appellant (or its predecessor) was using the land as a construction equipment storage site and failed to take action, prejudicing Appellant. The support for this position is found in the record of the 2008 litigation in the J.P. Court.

Some history of the 2008 litigation was recited above. It appears that after the case was remanded from the Court of Common Pleas back to the J.P. Court, the parties settled the matter, and the County dropped the citations. Exactly what happened and why is not a matter of public record, but the LIRB Opinion recited testimony of a County Code Enforcement Officer familiar with the 2008 case who said that on inspection of the property in January, 2011, "the [p]roperty had been brought into compliance and there was no longer evidence of construction equipment or construction vehicles being stored on the [p]roperty."[26]

It is true that Mr. Augusiewicz testified that from 2006 to January, 2011, "nothing changed with the use of the [p]roperty."[27] Whether this seeming conflict in the testimony was resolved against the Appellant, or whether Appellant simply

---

*Creek Recreational Services, LLC v. New Castle County*, a case that squarely held that the Superior Court had no jurisdiction to entertain a defense of laches. 238 A.3d 208 (Del. Super. 2020). Any such review is limited to whether the administrative agency whose actions are under review appropriately applied the doctrine when it considered the claim. *See generally State v. Moffitt*, 2000 WL 973120, at *3 (Del. Super. May 3, 2000); *McGlinchey v. Phoenix Steel Corp.,* 293 A.2d 585, 588 (Del. Super. 1972).

[26] R000046.
[27] R000041.

did not raise laches as a defense at the LIRB, the result is the same: the LIRB did not find laches applicable. And while Appellant believes it should have, it cites nowhere in the record where the issue was raised. Issues not raised below cannot be raised on appeal. Appellant has shown the Court nothing in the record before the LIRB that suggests that the Board committed a manifest error of law requiring reversal or remand of its findings.

## IV. Appellant Failed to Introduce a Prima Facie Case of Selective Enforcement.

Appellant claims that it believes many properties in New Castle County that receive a farmland exemption are being used improperly for other purposes. It claims it has been singled out selectively for enforcement of the county code. At the LIRB hearing, Mr. Augusiewicz testified that using county software, called Parcel View and aerial photographs, he could identify 15 other properties in the County that had construction equipment or other miscellaneous non-farm uses and none, to his knowledge were prosecuted.

Whether a "selective enforcement" claim is even cognizable in an administrative proceeding is dubious. Certainly, Appellant cites no precedent upholding such a finding in an administrative proceeding. Rather, selective enforcement claims lie in the realm of criminal prosecutions that are "deliberately based upon an unjustifiable standard such as race, religion or other arbitrary

classification."[28]  It appears that this was the tack chosen by the LIRB, which ruled it had no jurisdiction to entertain a selective enforcement claim. This is consistent with case law holding that administrative boards have no jurisdiction over constitutional claims.[29]

But even if the Board had decided to entertain the claim, Appellant's evidence was only that the County was persistent in pursuing its claims against him; not that he was singled out on the basis of race, or gender, or other improper classification. The executive authority has broad discretion in its enforcement powers and the standard for proving discriminatory intent "is a demanding one."[30]  About the only argument Appellant makes is that the County is "after" him because of his "successful" defense of similar citations in 2008.  Being a "repeat offender" of the zoning and property maintenance code may explain the County's insistence on pressing these claims, but it does not put Appellant in a "suspect class" to meet the threshold of a claim of selective prosecution.

Moreover, the County produced an inspector who works in code enforcement. He testified that he researched the 15 properties cited by Appellant at the RTSC

---

[28] *Oyler v. Boles,* 368 U.S. 448, 456 (1962).
[29] *See e.g. Tatten Partners, L.P. v. New Castle County Bd. Of Assessment Review*, 642 A.2d 1251, 1261-62 (Del. Super. 1993), *aff'd,* 647 A.2d 382 (Del. 1994).
[30] *U.S.  v. Armstrong,* 517 U.S. 456, 463 (1996).

Hearing and found that either no violation existed, a violation notice was issued, or investigation into the matter was ongoing.[31]

Thus, had the LIRB ruled on the merits of the selective enforcement claim there is no doubt but that it would have (or at least should have) denied the claim. So, whether it declined jurisdiction on constitutional grounds or simply denied the claim, the issue is irrelevant to the outcome here. The Board did not act manifestly in derogation of the law.

## V.    The RTSC Hearing Officer had Jurisdiction Over the Citations.

Appellant's final argument is that if the LIRB did not have jurisdiction over the zoning citations, then the RTSC Hearing Officer didn't either. Exactly what Appellant wants the Court to do with that argument is not articulated in the Opening Brief, although by the Reply Brief it asserts how perhaps the Court should decide the zoning appeals, since the LIRB declined jurisdiction. The Court demurs.

"Delaware law strongly favors exhaustion of administrative remedies before seeking judicial intervention."[32] By Code, an Administrative Hearing Officer with the Department of Land Use has the responsibility to make initial determinations in cases involving the Building, Property Maintenance, Drainage, Rental and Zoning

---

[31] R00050-51.

[32] *Salem Church (Delaware) Associates v. New Castle County*, 2006 WL 2873745, at *4 (Del. Ch. Oct. 6, 2006) (*relying on Levinson v. Delaware Compensation Rating Bureau, Inc.*, 616 A.2d 1182, 1189-90 (Del. 1992)).

Codes.[33] There is no question here, and there was none below, that the RTSC Hearing Officer had jurisdiction to hear both the zoning citations and the PMC violations. Likewise, as reflected in the Court's findings earlier, appeals from the RTSC hearing Officer must be to the "appropriate board." The County's website directs users to the LIRB or the Board of Adjustment, depending on the citation at issue.[34]

For whatever reason, Appellant did not appeal the zoning citations to the zoning Board of Adjustment. Why not is never explained, except for the argument that it is cumbersome, which may be a fact of life, but is not a legal argument. The Court is not going to undo Appellant's choices. Appellant was represented by able counsel who elected to file but one appeal, to the LIRB. It cannot now, some 2 years after the fact, seek review of what it waived by not appealing to the Board of Adjustment when the time was right.

## CONCLUSION

For all of the foregoing reasons, the rulings of the LIRB are **AFFIRMED.**

**IT IS SO ORDERED**.

/s/ Charles E. Butler
Charles E. Butler, Resident Judge

---

[33] *Administrative Hearings*, Office of Administrative (Rule to Show Cause) Hearings, https://www.newcastlede.gov/1872/Administrative-Hearings.
[34] *Id.*